BLACK *v.* JONES.

4-7701                                          188 S. W. 2d 626

Opinion delivered July 9, 1945.

1012

*J. G. Moore,* for appellant.

*Raymond Jones,* for appellee.

Millwee, J. In the Democratic primary election of August 8, 1944, appellant and appellee were rival candidates for the nomination for Circuit and County Clerk of Perry county. On August 11, 1944, the Perry County Democratic Central Committee canvassed and certified the returns of said election, showing appellee to have received 810 votes and appellant to have received 767 votes. Thus appellee had a *prima facie* majority of 43 votes, and was certified as the nominee.

On August 18, 1944, appellant filed contest in the circuit court. His complaint was supported by the affi-

davit of the requisite number of electors (§ 4738, Pope's Digest), but alleged irregularities and illegal voting in only broad general terms, such as: "200 of the votes cast and counted for contestee were cast by persons in polling places other than in the townships in which they lived and were qualified voters. All such votes were illegal and should be subtracted from the total vote received by contestee. . . . 25 of the votes cast and counted for the contestee were cast by persons who were not qualified electors of Perry county, and said votes are therefore invalid." In addition, the appellant claimed the entire absentee ballot box to be void because of fraud and irregularity.

Appellant prayed in the complaint for access to the poll books and tally sheets, for the discarding of the entire absentee ballot box, and for the purging of the election returns, and that appellant be declared the nominee.

Appellee filed demurrer to the complaint, which was treated as a motion to make more definite and certain; and on September 11, 1944, appellant filed his first amendment to the complaint, in which he named eighteen persons as having voted illegally. Thereupon appellee filed a motion to require appellant to make the complaint more definite and certain by showing the name of each and every person alleged to have voted illegally; and on September 12, appellant filed his second amendment to the complaint, in which he named 36 persons (in addition to the 18 in the first amendment) alleged to have voted illegally.

The effect of the original complaint and these two amendments was to present to the court the names of 54 allegedly illegal voters claimed by appellant to have voted for the appellee. Since appellee only had a majority of 43 on the *prima facie* returns, the complaint with these two amendments stated a cause of action on the number of illegal votes. In addition to the 54 named allegedly illegal voters, appellant had alleged that the entire absentee box should be thrown out because of fraud and irregularities. Such was the gravamen of the case, *i. e.,* 54 allegedly illegal voters named, and the absentee box contested *in toto.*

The court gave the appellant until the time the appellee filed his answer and cross-complaint to file any further amendment to the complaint. This limitation of time expired on September 25, when appellee filed his answer and cross-complaint. The appellant on October 6 attempted to file a third amendment to the complaint, adding additional names as illegal voters; and the court (Judge Auten presiding) refused to allow such amendment. Attention was called by the court to the previous ruling and the following statements are found in the record on this point:

"Mr. Jones: What ruling will the court make on the third amendment to contestant's complaint?

"The Court: I don't think either side has any right to amend. If the court permits this amendment he undoubtedly would have to be as fair to the contestee and permit him to amend and if Mr. Moore felt that the name of some other person should be included he might want to amend and that go on indefinitely and be going on when the term of office expires. I don't believe the amendment is proper. . . .

"The Court: I have already ruled that both sides are bound by the particular votes mentioned in the complaint and cross-complaint. . . ."

No exceptions were made to this ruling, so we understand that each side was bound by the court's rulings to the effect: (1) that the contestant upon motion to make more definite and certain must give the names of the voters whose votes are claimed to be illegal; and (2) that the court fixed a reasonable time after which no amendments or additional names could be added.

After the hearing of the cause before Judge Auten on October 6, 1944, court was recessed until October 16, 1944. In the meantime Judge Auten became ill, and Judge Hendricks (by stipulation and consent of both sides) conducted the hearing on October 16, 1944. At the conclusion of that hearing the record (transcript page 157) reflects that both sides rested, and the court took the case under advisement and rendered a memo-

randum opinion, in which it was held that appellant had not proven the illegality of enough votes to give him a majority and both parties were permitted to prepare and present requested findings of fact and declarations of law. This memorandum opinion appears to have been rendered on November 9, 1944, and the final judgment was rendered shortly thereafter, and was a finding and judgment for appellee (contestee). From an unavailing motion for new trial appellant brings this appeal, presenting these three questions in the briefs: (1) that he has never had a trial in this case; (2) that the entire absentee box should be discarded; (3) that this court should reverse and remand the cause, with directions to the Circuit Court to examine the ballots and purge the same, and declare appellant the nominee.

The appellant first contends that he has never had a trial of this case. We cannot agree with this contention. The case was heard before Judge Auten on October 6, 1944; and at the conclusion of that hearing, the court ruled that appellant had failed to meet the burden of showing sufficient evidence of fraud either to throw out the absentee box or require that it be gone into and purged of illegal votes. On October 16, 1944, the hearing was resumed with Judge Hendricks presiding by stipulation and consent because of the illness of Judge Auten; and at the conclusion of this hearing both parties rested their case. In 53 Am. Jur. 28, "trial" is defined as follows:

"The word 'trial' has been defined as the judicial investigation and determination of the issues between the parties to an action. The word is commonly used to designate that step in an action by which issues or questions of fact are decided, but often signifies an examination of matters of law as well. The term is sometimes defined by statute as meaning a judicial examination of the issues, whether of law or of fact."

All the essentials of a trial were strictly followed in this case. The record here is not questioned; and it shows that issues were made by pleadings, that court convened, that both sides were present, that witnesses

were heard, that both sides rested, that final ruling was made, and that an appeal was prayed and allowed. We, therefore, unhesitatingly hold that appellant had a trial of his cause.

As to appellant's second and third contentions—*i. e.*, discarding the absentee ballots and purging the other boxes of the allegedly illegal votes—we find it unnecessary, in the condition of this record, to consider either of these points, because the appellant has wholly failed to prove for whom a single challenged voter cast his vote. Appellant states in his brief that 214 votes were cast in the absentee box, and that 150 of these were cast and counted for appellee, and 64 for appellant. It is alleged in the complaint that 150 void votes in the absentee box were counted for appellee, but a careful examination of the record discloses neither allegation nor proof of the total vote in the absentee box nor the number of votes received by appellant in that box. No tally sheet or return showing the vote either candidate received in any box or precinct appears in the evidence. Testimony was introduced which would tend to show that probably 20 of the challenged votes were illegal; but there is no evidence as to how any of these challenged voters cast his vote. This was not the fault of the court. No one forced the appellant to rest his case. Prior to resting, he made no motion or request that the ballot boxes be gone into, and made no proof or tender of proof as to how any particular elector voted.

If we should throw out all the votes that the appellant challenges in this appeal—that is, all the absentee box and all the 54 challenged named voters—we would have no way of knowing whether the result of the election would be changed, because it was not shown how a single challenged voter cast his vote.

In an election contest, the contestant must prove, among other things, that enough challenged votes were illegal and cast for the contestee, so as to change the result of the election; else, no case is made. In *Swepston v. Barton,* 39 Ark. 549, this court passed on this question, saying:

"The remaining grounds of contest, if they are true in fact, are insufficient to change the result. It is no valid objection to an election that illegal votes were received, or legal votes rejected, if they were not numerous enough to overcome the majority. *Sudbury* v. *Stearns,* 21 Pick., 148; *Blandford* v. *Gibbs,* 2 Cush., 39; *Christ Church* v. *Pope,* 8 Gray, 140; *Ex parte* Murphy, 7 Cow. 153; *McNeeley* v. *Woodruff,* (13 N. J. L. 352) 1 Green 352; *The People* v. *Cicott,* 16 Mich. 283, 97 Am. Dec. 141; *The People* v. *Tuthill,* 31 N. Y. 550; Matter Chanango County Mutual Insurance Co., 19 Wend. 635." To the same effect, see *Webb* v. *Bowden,* 124 Ark. 244, 187 S. W. 461, where we said: "But if the returns had been purged of all the illegal votes shown to have been cast in those precincts, it could not have affected the general result. 'It is no valid objection to the election that illegal votes were received or that legal votes were rejected if they were not numerous enough to overcome the majority.' *Swepston* v. *Barton,* 39 Ark. 549."

It is not enough for a contestant to allege that illegal votes were cast. It is essential that the contestant *prove* by evidence that enough illegal votes were cast for the contestee to overcome the contestee's *prima facie* majority. This the appellant failed to do, and it, therefore, follows that the findings and judgment of the trial court are in all things correct. Affirmed.