Sherry TATE-SMITH *v.* H.E. CUPPLES, Jr.

03-314 134 S.W.3d 535

Supreme Court of Arkansas
Opinion delivered December 4, 2003

*J.F. Valley, Esq., P.A.*, by: *J. F. Valley*, for appellant.

*Rees Law Firm*, by: *Thomas A. Young*, for appellee.

RAY THORNTON, Justice. This appeal arises from an election-contest case. On November 26, 2002, a runoff election was held in Crittenden County for the position of Justice of the Peace, District 7. Appellant, Sherry Tate-Smith, and appellee,

H.E. Cupples, Jr., were candidates for the office. Appellant was declared the winner of the election, and on December 6, 2002, the Crittenden County Election Commission ("Commission") certified appellant as the winner of the election with a total of 227 votes to 219 votes for appellee for an eight-vote margin. Based upon a complaint filed by appellee, the trial court considered the matter, heard the evidence, determined that ten votes should be disqualified, declared appellee to be the winner, and ordered the Commission to certify the election and to effectuate the trial court's order. Appellant brings this appeal, and we affirm.

Appellee's complaint alleged that (1) the Commission failed to enforce voting laws by allowing eight people to vote in violation of Ark. Code Ann. § 7-5-201(6)(d)(1) (Repl. 2000) [sic]; (2) that eight absentee ballots should have been disqualified; (3) that Elmo Lewis voted more than once and that his votes should be disqualified; and (4) that the disqualification of the illegal votes would be sufficient to reverse the election results and make appellee the winner. In his complaint, appellee sought to enjoin appellant from taking office until a hearing on the matter was held.

On December 31, 2002, the trial court entered a temporary restraining order that prohibited and restrained appellant and her co-defendants from administering or taking the oath of office until a hearing was held, which took place on February 5, 2002.

Appellant filed a motion to dismiss on January 7, 2002. In her motion, appellant, without citation to authority, averred that the complaint failed to state a cause of action upon which relief can be granted because it was insufficient, it failed to demonstrate that appellee would prevail, it did not name the persons who voted illegally, and it failed to state whether their votes were cast for appellant.

At the hearing, Ruth Trent, county clerk, testified as to the absentee ballots cast by the individuals named in the complaint. She testified that Tiffany Brown registered to vote by mail on October 7, 2002, that Kenneth Freeman registered by mail on October 7, 2002, that Broksie Hawthorn registered by mail on October 4, 2002, that Latonya Holmes registered by mail on September 24, 2002, that Candice Lytle registered by mail on September 24, 2002, that Ruby Tate registered by mail on October 7, 2002, that Carl Washington registered by mail on October 7, 2002, and that Michael Pruitt registered by mail on

September 24, 2002. Ms. Trent also testified that these voters registered to vote and made an application for absentee ballots, and that all the named individuals voted for the first time by absentee ballot. Ms. Trent testified that all eight voters voted for appellant. Ms. Trent further testified that her records indicated that Elmo Lewis voted by absentee ballot for appellant, and also voted at the polls.

Appellant made a motion for directed verdict on the basis of *Womack v. Foster*, 340 Ark. 124, 8 S.W.3d 854 (2000). The trial court denied appellant's motion for directed verdict, and requested that the parties brief the issues. Thereafter, the trial court made the following findings of fact from the bench: (1) that the eight named persons voted by absentee ballot, (2) that they applied for voter registration by mail, and (3) that they failed to appear in person to vote. As to Mr. Lewis, the trial court found that he voted absentee for appellant and also voted at the polls, thereby voting twice in the same election.

After the trial court made these findings of fact, appellee was called as a witness, and he testified that he signed the complaint when he filed it with the trial court, and a clerk verified that he signed it.

After briefs were submitted, the trial court entered an order on February 28, 2003, with the following rulings:

> 3. That the court finds, after considering the pleadings, documents submitted into evidence, testimony, argument of counsel and the briefs submitted to the court that the plaintiff timely, properly and sufficiently filed, served, and pled the matter before the court.
>
> 4. That the court finds that Tiffany Brown, Kenneth Freeman, Broksie Hawthorne, Latonya Holmes, Candice Lytle, Ruby Tate, Carl Washington, and Michael Pruitt failed to qualify as legal voters under Ark. Code Ann. § 7-5-201(1) and therefore their votes should never have been counted.
>
> 5. That since the eight above-named individuals voted illegally in the runoff election held on November 26, 2002, their votes are to be thrown out and not considered when calculating the final count and results of said election.

6. -That Elmo Lewis voted two times in the runoff election in violation of Arkansas law; therefore, neither of his votes are to be counted or considered when calculating the final count.

7. That the evidence before the Court shows that Plaintiff, H.E. Cupples, Jr., received 219 votes.

8. That when the illegal votes are thrown out, the result of the election is that H.E. Cupples received two more votes than Defendant Smith, thus making H.E. Cupples the winner of the Justice of the Peace, District 7 race of November 26, 2002.

9. That the court declares H.E. Cupples the winner of the November 26, 2002 runoff election for the position of Justice of the Peace, District 7 of Crittenden County, Arkansas.

10. That the court hereby orders the Crittenden County Election Commission to certify H.E. Cupples, Jr. as the winner of the runoff election for Justice of the Peace, District 7 and take whatever steps necessary to see that the court's ruling and order are given full force and effect.

On March 6, 2003, appellant filed a motion for new trial and a motion for specific findings of fact and conclusions of law. On March 7, 2003, appellant filed her notice of appeal. From the record, it appears that the trial court did not make a ruling on appellant's motion for new trial.

Appellant now brings her appeal from the February 28, 2003, order. On appeal, she argues: (1) that the trial court erred in denying appellant's motion to dismiss, (2) that the trial court erred in interpreting Ark. Code Ann. § 7-5-201(d)(1), (3) that the trial court erred in its ruling regarding the Broksie Hawthorne evidence, (4) that the trial court erred in its remedy, (5) that the trial court erred in its ruling regarding Ruby Tate's vote, and (6) that the trial court erred in its ruling on Elmo Lewis's vote.

For her first point on appeal, appellant argues that the trial court erred in denying her motion to dismiss. Specifically, citing *Womack, supra*, appellant contends that the complaint filed by appellee failed to state a cause of action because the complaint did not state the candidate for whom the named voters voted.

At the outset, we note that an election contest is a statutory or special proceeding under Ark. R. Civ. P. 81. Rule 81 provides that the rules of civil procedure do not apply where a statute specifically creates a right, remedy, or proceeding that provides a different procedure. *See Rubens v. Hodges*, 310 Ark. 451, 837 S.W.2d 465 (1992). We have also held that contesting an election is purely statutory, and a strict observance of statutory requirements is essential to the exercise of jurisdiction by the court, as it is desirable that election results have a degree of stability and finality. *Reed v. Baker*, 254 Ark. 631, 495 S.W.2d 849 (1973). We have explained that the purpose of election contests is to aid the democratic processes upon which our system of government is based by providing a ready remedy whereby compliance with election laws may be assured to facilitate, not hinder by technical requirements, the quick initiation and disposition of such contests. *Id.*

In construing Ark. Code Ann. § 7-5-801 (Repl. 2000) (and its predecessor provision), we have required that an election complaint must state a *prima facie* case and plead sufficient facts to give the other party reasonable information as to the grounds of the contest. *Womack, supra* (citing *McClendon v. McKeown*, 230 Ark. 521, 323 S.W.2d (1959)). The pleading must do more than merely state generalities or conclusions of law to the effect that illegal votes were cast. *Womack, supra* (citing *Jones v. Etheridge*, 242 Ark. 907, 416 S.W.2d 306 (1967)).

In *Womack, supra*, a defeated candidate in a special election to fill a vacancy in the office of Ouachita County Municipal Judge brought an election contest, seeking to cancel 600 absentee votes based upon allegations of noncompliance with absentee-voting laws. The trial court invalidated 518 absentee votes for the declared winner and one absentee vote for the defeated candidate, thus resulting in a victory for the apparently defeated candidate. The originally declared winner filed a counterclaim and an amended counterclaim. On appeal, we affirmed the dismissal of the counterclaim and the amended counterclaim, holding that neither pleading stated a cause of action for affirmative relief. *Id.*

In *Womack, supra*, we stated:

> To state a cause of action for affirmative relief in an election contest, one must name the voters who allegedly cast invalid ballots, allege that they voted for the other candidate, and allege that the total of the invalid votes is sufficient to change the outcome of the election. *Id.; Files v. Hill,* 268 Ark. 106, 594 S.W.2d 836 (1980). We recently reaffirmed these requirements for stating a claim for affirmative relief in election-contest cases. *King v. Whitfield,* 339 Ark. 176, 5 S.W.3d 21 (1999). At a minimum, the complaint for affirmative relief must include the number of votes received by each candidate, so that it appears, after subtracting the alleged invalid votes, that the claimant has more votes than his opponent. *Id.*

*Womack, supra. See also Simonetti v. Brick,* 266 Ark. 551, 587 S.W.2d 16 (1979).

We based our decision in *Womack, supra,* on *Wheeler v. Jones,* 239 Ark. 455, 390 S.W.2d 129 (1965), where we required either an identification of the illegal voters or an allegation that the illegal votes were cast for appellee. In *Wheeler, supra,* the plaintiff omitted from his complaint which candidate benefitted from the illegal votes. The complaint set out the total votes per candidate and then asserted that fifty-two named persons voted in an absentee box and were not qualified electors and that 196 named persons voted in precincts in which they did not reside. We held that *the complaint did not state a cause of action because the plaintiff did not allege whether the contested votes were cast for the other candidate or that the election results would be different if those votes were set aside. Id.* (emphasis added). *See also Files, supra* (holding that an election contestant's complaint without any identification of either the vote or the voters does not contain sufficient factual allegations to state a cause of action); *McClendon v. McKeown,* 230 Ark. 521, 323 S.W.2d 542 (1959) (holding that the complaint failed to state a cause of action because the contestant failed to allege he had received a majority of the legal votes cast or to name the persons whose votes he claimed were illegal).

In the present case, appellee's complaint complied with the requirements established for stating a cause of action under *Wheeler, supra,* and *Womack, supra.* First, appellee named all nine voters in question. In paragraph six of his complaint, appellee named eight of the nine individuals who voted in violation of Ark. Code Ann. § 7-5-201(d)(1), and in paragraph nine, he also named Elmo Lewis who voted illegally by voting twice in the same

election. Second, although he did not allege in his complaint the candidate for whom those nine voters voted, as required by the second factor in *Womack, supra*, he nevertheless satisfied the "minimum requirement" for complaints established in *King, supra*, which we cited with approval in *Womack, supra*, by including the number of votes received by each candidate so that a subtraction of the illegally cast votes would show that the contestant received more votes than appellant. Third, in paragraph four of his complaint, appellee averred that the Commission certified appellant as the winner with a vote total of 227 to 219 for appellee for a difference of eight votes. In paragraph ten of the complaint, he states "[t]hat the disqualification of the [named voters'] votes is sufficient to reverse the election results and certify Cupples the true winner of said election." This statement satisfies the third factor in *Womack, supra*, as well as the requirement set forth in *Wheeler, supra*.

Therefore, we hold that the trial court correctly denied appellant's motion to dismiss because appellee's complaint was sufficient in meeting the "minimum requirement" discussed in *Womack, supra*.

For her second point on appeal, appellant argues that the trial court erred in interpreting Ark. Code Ann. § 7-5-201(d)(1). Specifically, appellant contends that Appellee's complaint cites Ark. Code Ann. § 7-5-201(6)(d)(1), a non-existent statute.

In paragraph six of Appellee's complaint, he states:

6. That the following persons voted in violation of the Arkansas Code 7-5-201(6)(d)(1) and therefore, these votes should be disqualified and not counted:

 #2 Brown, Tiffany

 #4 Freeman, Kenneth

 #5 Hawthorne, Broksie

 #6 Latonya Holmes

 #8 Lytle, Candice

#9 Tate, Ruby

#12 Washington, Carl

#13 Pruitt, Michael

Citing *King, supra*, appellant further argues that the trial court erred in allowing appellant to amend the complaint at trial by correcting the code section. At the hearing, the following colloquy took place during open arguments:

> THE COURT: What is Arkansas Code 7-5-201(6)(d)(1)?
>
> MR. YOUNG [counsel for Appellee]: Apparently that's a typographical error.
>
> THE COURT: What was it supposed to have been?
>
> MR. YOUNG: Well, it's real simple, Your Honor. It's supposed to be 7-5-201(d)(1). So I mean, for them to argue they didn't have any notice, I think that other than there not being a six in there and when you read it along with the allegations. They, number one, registered by mail and voted by mail on their first time. It was a violation of it. I don't think they can argue they were mystified as to what we were going under. The fact that there's not a six in the actual statute and the fact that there is — I think they know exactly what statute we're going under and the reasons therefor.

Appellant's argument that the complaint is based upon a non-existent statute is untenable. Although appellant is correct that one cannot amend the complaint under *King, supra*, this was not a circumstance in which the complaint was amended. Rather, at the hearing, the opportunity was taken by counsel to clarify a typographical error made in the complaint. We have held that mere clerical or typographical errors that could not have misled the opposing party will not vitiate a pleading. *Edwards v. Brimm*, 236 Ark. 588, 367 S.W.2d 433 (1963).

Next, appellant argues that because these voters voted for a second time in the runoff election on November 26, 2002, Ark. Code Ann. § 7-5-201(d)(1) is inapplicable and that their votes should count in the runoff election.

Arkansas Code Annotated § 7-5-201(d)(1) provides:

> (d)(1) Any person registering to vote by mail shall appear in person to vote the first time he or she casts a ballot.

*Id.*[1]

Here, the following colloquy occurred during the redirect examination of Ruth Trent, county clerk:

MR. YOUNG: Everybody but Mr. Elmo Lewis, according to your records, registered by mail for the first time?

MS. TRENT: That's right.

MR. YOUNG: Everybody we discussed [the eight voters named in the complaint] voted absentee for the first time?

MS. TRENT: That's right.

MR. YOUNG: After having registered by mail?

MS. TRENT: Yes, sir.

MR. YOUNG: And that's a violation of the statute?

MS. TRENT: Yes, sir.

Ms. Trent's testimony reveals that these eight voters registered by mail to vote by absentee ballot and voted by absentee ballot for the first time. This practice is in clear violation of Ark. Code Ann. § 7-5-201(d)(1), which dictates that one must vote in person for the first time.[2] The named voters in this case did not do so. We have held that there must be strict compliance with statutory provisions regarding the application for and casting of

---

[1] We note that Act 994 of 2003 has recently amended this statute, but the new statute is not applicable to the present appeal because the facts here stem from an election that occurred in 2002.

[2] There are exceptions to Ark. Code Ann. § 7-5-201(d)(1) (Repl. 2000) found at Ark. Code Ann. § 7-5-201(d)(2) (Repl. 2000), but they are not applicable in the present case.

absentee ballots, even if the challenge is brought after the election has occurred. *Womack, supra* (citing *Bingamin v. City of Eureka Springs,* 241 Ark. 477, 408 S.W.2d 607 (1966)). Based upon this well-established principle of law, we hold that the named voters did not meet the requirement of strict compliance with Ark. Code Ann. § 7-5-201(d)(1), and that the trial court did not err in its ruling.

For her third point on appeal, appellant argues that the trial court erred in permitting the introduction of evidence regarding Broksie Hawthorne, Jr. when the complaint merely named Broksie Hawthorne. Specifically, appellant contends that Appellee amended his complaint at trial by introducing evidence of Broksie Hawthorne, Jr.'s vote.

At trial, the following colloquy took place:

> MR. VALLEY [counsel for appellant]: Yes, Your Honor. I think there's a pending motion to admit these documents here on Broksie Hawthorne. We would object. The pleading represents Broksie Hawthorne, and the application and the voter records show Broksie Hawthorne, Junior, and he's bound by his pleadings. He's not pled that person.

> THE COURT: What does the list that they write out the voter — does it show Broksie Hawthorne, Junior?

> THE WITNESS [Ruth Trent]: Broksie Hawthorne. She was pulled — I pull [sic] it up by the birth date on the application. That's how we got that B or him, whoever it is. I'm not sure whether it's a him or a her.

> THE COURT: I'm going to receive it.

We said in *Edwards, supra* that, as a general rule, mere clerical or typographical errors that could not have misled the opposite party will not vitiate a pleading. Here, appellee filed a complaint alleging Broksie Hawthorne as one of the eight voters who illegally cast their vote in the election. However, at trial over appellant's objection, appellee presented evidence on Broksie Hawthorne, Jr. Appellant's argument is misplaced because she should have been put on notice that appellee was contesting the vote of Broksie Hawthorne, Jr.'s vote when a copy of his applica-

tion for an absentee ballot was attached as an exhibit to his complaint. On the application, the name listed is Broksie Hawthorne, Jr. We conclude that the trial court did not err in its ruling.

For her fourth argument on appeal, appellant argues that the trial court erred in disqualifying the votes of the nine voters named in appellee's complaint. Appellant relies on *Logan v. Moody*, 219 Ark. 697, 244 S.W.2d 499 (1952) for the proposition that the clerk failed to perform her duty of refusing those absentee ballots by any voter who had registered to vote for the first time by mail. Appellant claims that Ms. Trent testified that she and her staff failed to perform that duty, and that the voters should not be disenfranchised because of a mistake on the part of the county clerk.

Appellant's reliance upon *Logan, supra*, is misplaced. In *Logan*, we noted that "[t]he only defect . . . claimed, in the entire procedure of obtaining and returning the absentee ballot, was the failure of the clerk to place on the application for the ballot the date such application was received in the clerk's office." *Id.* We concluded that the exclusion of the absentee ballots for the reason that the county clerk failed to perform his duty by marking the date showing that each application received by him within the period required by statute was in error, and we reversed and remanded the matter. *Id.*

The facts here are distinguishable. In *Logan, supra*, there was no dispute as to whether the votes in question were cast illegally. However, in the present case, the trial court determined that the voters in question cast illegal votes in violation of Ark. Code Ann. § 7-5-201(d)(1) because they failed to vote in person for the first time after they made their applications to vote by absentee ballot. This evidence was supported by Ms. Trent's testimony. For these reasons, we affirm the trial court's ruling.

For her fifth argument on appeal, appellant argues that the trial court erred in disqualifying Ruby Mae Tate on the grounds that she violated Ark. Code Ann. § 7-5-201(d)(1). Specifically, appellant argues that Ms. Tate registered to vote before the statute came into existence.

This argument was not presented to the trial court, nor did the trial court ever rule on this issue. At trial, Ms. Trent testified that Ms. Tate registered to vote by mail on October 7, 2002. She also testified that Ms. Tate voted for appellant. It was not until

244

appellant's motion for new trial, filed on March 6, 2003, that appellant raised this issue. Nothing in the record indicates that the trial court ruled upon appellant's motion for new trial. Therefore, the motion for new trial is deemed denied. *See* Ark. R. Civ. P. 59(b); Ark. R. App. P.—Civil 4(b)(1).

 When a motion for new trial has been deemed denied in accordance with Ark. R. App. P.—Civil 4(c), the only appealable matter is the original judgment or order. *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002).[3] Further, we have repeatedly held that an objection first made in a motion for new trial is not timely. *Id.*; *see also Selph v. State*, 264 Ark. 197, 570 S.W.2d 256 (1978). Because the issue was not presented at the hearing, we do not consider for the first time on appeal an argument that was not raised and ruled on below. *Ghegan & Ghegan, Inc. v. Barclay*, 345 Ark. 514, 49 S.W.3d 652 (2001). Therefore, we are precluded from reaching the issue on appeal, and we affirm the trial court's rulings.

For her sixth point on appeal, appellant argues that the trial court erred in ruling that Elmo Lewis voted two times in the runoff election and that neither of his votes were to be considered when calculating the final count. Specifically, appellant contends that, based upon Ms. Trent's testimony, only one ballot was produced at trial, and there is no proof to support the trial court's ruling.

Arkansas Code Annotated § 7-1-103(19)(A) (Supp. 2003) provides:

> No person shall vote or offer to vote more than one (1) time in any election held in this state, either in person or by absentee ballot, or shall vote in more than one (1) election precinct in any election held in this state.

*Id.*

At the hearing, the following colloquy took place regarding Mr. Lewis's vote:

> Q: Do you also have the voting records regarding Mr. Lewis?

---

[3] A deemed-denied motion for new trial can be appealed if the notice of appeal is amended. *See* Ark. R. App. P.—Civil 4(b)(2). However, the notice of appeal in this case was not amended.

A: I have the—

Q: Do you have the voting records and ballots concerning Mr. Elmo Lewis as were cast in the November 26th election?

A: I have the absentee ballot, and I have a sign-in sheet that shows that Mr. Lewis voted at the polls and also voted absentee ballot.

MR. VALLEY [counsel for appellant]: Your Honor, we'd object to any further testimony if she doesn't have both ballots.

THE COURT: I'll have to have the other ballot, too. I mean, it will be disqualifying, whatever it is — whoever he cast a vote for. If he voted twice, that's also a crime.

MR. YOUNG: I need the ballot.

THE COURT: Do you have the ballot for the general election — ah, for when he signed in? You're going to have to go through and pull the whole ballot box, aren't you?

THE WITNESS: Pull the whole ballot box, yes, sir.

THE COURT: And then go through and find that number.

THE WITNESS: Would he not be eligible to vote one time?

THE COURT: Yes, he would but — I'm not sure. If you vote twice, it disqualified both votes, I think, I'm not sure. I don't know what the law is.

MR. YOUNG: At any rate, even if we just take the one, you know —

THE COURT: How did he vote absentee?

THE WITNESS: He was mailed an absentee ballot and — I mean I've heard — I don't know. This is hearsay so I can't say it. He just — I don't know. He went to the polls and voted also.

THE COURT: How did he vote on the absentee ballot?

THE WITNESS: Oh, I'm sorry. He voted for Sherry Tate.

MR. YOUNG: Your Honor, at this point in time, I guess we need to recess in order that she can get Ms. Hawthorne's record and get the other record on Mr. Lewis so that I can present them in evidence.

THE COURT: We'll get Ms. Hawthorne's business later. Let's go on and finish up with the rest of these.

* * *

THE COURT: Okay. Where is the proof that this is the first time they voted? I've got to have that.

* * *

THE COURT: All right, well, let's get it. How long will that take you, Ruth?

THE WITNESS: I'll just have to go downstairs and find the card.

MR. YOUNG: What about Elmo's?

THE COURT: Get it, too. Well, no. That will take forever to dig that out. I'm not interested in that right now. We know he voted twice.

██ Here, there is sufficient evidence to show that Mr. Lewis voted twice because Ms. Trent produced an absentee ballot cast by Mr. Lewis, as well as a sign-in sheet from the polls that indicated that Mr. Lewis voted a second time at the polls. Appellant does not contend that Mr. Lewis did not vote for her at the polling place, but objects that the ballot itself was not introduced into evidence. Based upon the evidence of the absentee ballot and the sign-in sheet at the polling place, we hold that the trial court did not abuse its discretion in ruling that Mr. Lewis·voted twice and that Mr. Lewis's votes for appellant should be excluded.

We note that disqualifying only Mr. Lewis's absentee vote because he voted twice would have resulted in the election of appellee. In its order, the trial court stated that appellee received two more votes than appellant. At the hearing, Ms. Trent testified that Mr. Lewis's absentee ballot reflected that he voted for appellant. Even if Mr. Lewis's illegal vote at the polls had not been excluded, appellee would still have won by one vote.

In *Phillips v. Melton*, 222 Ark. 162, 257 S.W.2d 931 (1953), we held that it was unnecessary to consider votes, the decision of which would not change the result in the case. In *Black v. Jones*, 208 Ark. 1011, 188 S.W.2d 626 (1945), we quoted from the early case of *Swepston v. Barton*, 39 Ark. 549 (1882):

> The remaining grounds of contest, if they are true in fact, are insufficient to change the result. It is no valid objection to an election that illegal votes were received, or legal votes rejected, if they were not numerous enough to overcome the majority. To the same effect, *see Webb v. Bowden*, 124 Ark. 244, 187 S.W. 461, 465, where we said: 'But if the returns had been purged of all the illegal votes shown to have been cast in those precincts, it could not have affected the general result. 'It is no valid objection to the election that illegal votes were received or that legal votes were rejected if they were not numerous enough to overcome the majority.'

*Black, supra.*

Based upon this well-established precedent, we affirm the trial court's rulings on this point.

Affirmed.