Rep. Arnell WILLIS *v.* Jack CRUMBLY;
the St. Francis County Election Commission, Frederick Freeman, Chair; Maceo Hawkins and Chris Oswalt, all in Their Individual Capacities as Members of the St. Francis County Election Commission

07-572                                                    268 S.W.3d 288

Supreme Court of Arkansas
Opinion delivered November 15, 2007

*Vickery & Carroll, P.A.*, by: *Robin J. Carroll; J. Leon Johnson*; and *Dion Wilson*, for appellee Jack Crumbly.

*Fletcher Long, Jr.*, for appellees St. Francis County Election Commission, Frederick Freeman, Maceo Hawkins, and Chris Oswalt.

ROBERT L. BROWN, Justice. Representative Arnell Willis appeals for the second time from a dismissal by the St. Francis County Circuit Court of his complaint challenging the validity of the runoff election between Jack Crumbly and him in the Democratic Primary for the Arkansas State Senate District 16 elec-

tion. We reverse the order dismissing the case in favor of Crumbly and the St. Francis County Election Commission, and we remand for additional proceedings.

The facts leading up to the circuit court's dismissal are these. Willis, Crumbly, and Alvin Simes were candidates in the Democratic Primary election held on May 23, 2006, for the Arkansas State Senate District 16. A runoff election between Willis and Crumbly was held on June 13, 2006, in which Crumbly received seventy-eight more votes than Willis and was certified as the winner. On July 7, 2006, Willis filed a petition in the St. Francis County Circuit Court against Crumbly, the St. Francis County Election Commission, Frederick Freeman as Chair of the Election Commission, and Maceo Hawkins and Chris Oswalt, all in their official capacities as members of the Election Commission (hereafter collectively referred to as "Crumbly"), to oust Crumbly, or, alternatively, to void the runoff election and hold a special runoff election.

In the petition, Willis, among other things, challenged the validity of certain votes and alleged voter fraud on behalf of Crumbly's supporters during the course of the election. On motion by Crumbly, the circuit judge dismissed Willis's complaint, ruling that the office of state senator is a "state office" and that the case was nonjusticiable because Willis had failed to join the Secretary of State and the Democratic Party of Arkansas State Committee. Willis appealed from the order of dismissal, and in *Willis v. Crumbly*, 368 Ark. 5, 242 S.W.3d 600 (2006), we reversed and remanded the case and held that the office of state senator is a district office rather than a state office, that the Secretary of State and the Democratic Party of Arkansas State Committee were not necessary and indispensable parties, and that venue was proper in St. Francis County because that was the county where the alleged wrongful acts occurred.

On remand, the circuit judge set a trial date for December 6, 2006. At the bench trial, Willis presented a forensic expert, Dawn Reed, who questioned the signatures of forty voters. He also presented testimony of six instances of double voting and one incident of nonresident voting for a total of forty-seven challenged votes. He sought to go forward and present evidence of irregularities for certain nursing home voters listed in his petition, but was foreclosed from doing so.

After Willis presented his evidence at the bench trial, Crumbly moved for dismissal, which the circuit judge granted orally from the bench on December 8, 2006.[1] A written order granting the defendants' motion for dismissal was filed on May 24, 2007.[2] In the order, the circuit judge ruled that even if taken as true that all of the ballots called into question by Willis were irregularly cast, and assuming that all of those ballots were cast for Crumbly, there was still an insufficient number of fraudulent ballots to change the outcome of the election. The circuit judge dismissed Willis's complaint with prejudice and ordered the results of the June 13, 2006, runoff primary to stand as certified.

## I. Challenged Ballots

Willis maintains that the circuit judge abused his discretion by sustaining the appellees' objections and by not allowing his testimony and evidence to be introduced regarding the invalidity of certain ballots, which were primarily absentee ballots involving nursing home residents. More specifically, he contends that the circuit judge erred in barring this evidence and in ruling that permitting the evidence would be a substantive amendment to his complaint made more than twenty days after certification, which is prohibited under Ark. Code Ann. § 7-5-801(d) (Repl. 2000). He claims that the circuit judge failed to make the distinction between: (1) an amendment to the pleadings to plead a new cause of action; and (2) a situation where additional facts are offered to support an existing cause of action.

Willis further insists that the circuit judge erred in holding him to a strict-compliance standard and in precluding him from presenting evidence of additional facts to prove voter irregulari-

---

[1] Though termed a motion for directed verdict by counsel and the circuit court, because the trial was a bench trial, the motion was in actuality a motion to dismiss. See Ark. R. Civ. P. 50(a) (2007). We will refer to the motion as a dismissal motion in this opinion.

[2] Willis made repeated attempts to secure a written order from the circuit judge so he could appeal, but the circuit judge did not respond to his requests for nearly six months. Willis finally filed a petition for a writ of mandamus with this court to compel the circuit judge to enter a final order. The circuit judge entered a written order in the interim, and in a per curiam opinion, this court declared Willis's petition for writ of mandamus moot. See Willis v. Crumbly, 370 Ark. 374, 259 S.W.3d 417 (2007) (per curiam). This court, however, said it was concerned with the circuit judge's failure to issue a final order promptly and respond to Willis's requests, and a copy of the per curiam opinion was submitted to the Arkansas Judicial Disability and Discipline Commission for its consideration. See id.

ties. He contends that he alleged a *prima facie* cause of action by stating in his petition the number of votes in contention, the total number of votes cast, and the fact that exclusion of the contested votes would cause a different result. He further insists that he alleged these facts sufficiently in his petition to give his opponent reasonable notice that certain ballots were at issue in this case due to statutory irregularities. He was entitled, he maintains, to introduce evidence supporting these allegations.

Crumbly disagrees and contends that by attempting to introduce evidence of facts not included in his complaint, Willis was essentially amending his complaint. Crumbly further responds that Willis only offered proof that forty-nine votes should be impeached and that the circuit judge excluded evidence as to two of these votes, leaving only forty-seven votes properly challenged. Crumbly maintains that though Willis proffered two binders of voting records, which, Willis contends, contain proof of more invalid ballots, he did not argue to the circuit judge at trial or to this court on appeal which ballots in the binders are invalid or the reasons why they should be excluded.

We begin by noting that our standard of review regarding evidentiary rulings requires that a circuit judge be given broad discretion in evidentiary rulings, and this court will not reverse a circuit judge's ruling on the admissibility of evidence absent an abuse of discretion. *See McCoy v. Montgomery*, 370 Ark. 333, 259 S.W.3d 430 (2007).

Election contests are purely statutory, and "a strict observance of statutory requirements is essential to the exercise of jurisdiction by the court, as it is desirable that election results have a degree of stability and finality." *Tate-Smith v. Cupples*, 355 Ark. 230, 237, 134 S.W.3d 535, 538 (2003). This court has further explained that "the purpose of election contests is to aid the democratic processes upon which our system of government is based by providing a ready remedy whereby compliance with election laws may be assured to facilitate, not hinder by technical requirements, the quick initiation and disposition of such contests." *Id.* at 237, 134 S.W.3d at 538-39.

Our Election Code, at Arkansas Code Annotated § 7-5-801 (Repl. 2000), explains the procedure for contesting an election, and this court has construed that statute to require that an election complaint state a *prima facie* case and plead sufficient facts to give the defendant reasonable information as to the grounds of the

contest. *See, e.g., Tate-Smith, supra; Womack v. Foster,* 340 Ark. 124, 8 S.W.3d 854 (2000). Furthermore, this court has explained that "[a]t a minimum, the complaint for affirmative relief must include the number of votes received by each candidate, so that it appears, after subtracting the alleged invalid votes, that the claimant has more votes than his opponent." *Womack,* 340 at 151, 8 S.W.3d at 870.

In *McCastlain v. Elmore,* 340 Ark. 365, 10 S.W.3d 835 (2000), this court explained that a complaint in an election contest that was deficient when filed may not later be amended to allege a cause of action properly after the twenty-day filing period for the complaint has expired under § 7-5-801(d). This court specifically said that *"where a complaint fails to allege sufficient facts to state a cause of action in an election contest, it may not be subsequently amended by pointing to facts outside the complaint after the time for contesting the election has expired." McCastlain,* 340 Ark. at 369, 10 S.W.3d at 837 (emphasis in original).

Our *McCastlain* language makes it clear that a complaint may not be amended to state a new cause of action after the twenty-day period has expired. Once a deficient complaint has been filed, to allow the plaintiff to amend the complaint to properly state a cause of action would in effect be allowing the plaintiff to state a cause of action for the first time after the expiration of the twenty-day time limit. *See King v. Whitfield,* 339 Ark. 176, 5 S.W.3d 21 (1999) (Glaze, J., concurring).

This reasoning, however, does not apply when the original complaint sufficiently stated a cause of action when filed, and a new cause of action is not later being alleged. In *Ptak v. Jameson,* 215 Ark. 292, 295, 220 S.W.2d 592, 593-94 (1949), this court said:

> We have held that in an election contest the contestant cannot, after the expiration of the time for filing the contest, amend his complaint so as to set up a new cause of action, but that he may amend his complaint to make it more definite and certain as to any charge in the original complaint, and that the refusal to allow contestant to file an amendment setting up a new ground of contest was proper when the time for filing an amendment had expired.

*See also Winton v. Irby,* 189 Ark. 906, 909, 75 S.W.2d 656, 657 (1934) (quoting *Robinson v. Knowlton,* 183 Ark. 1127, 1133, 40 S.W.2d 450, 452 (1931)) (An election contestant may, "even after the time has expired, amend his complaint by making it more definite and certain

as to any charge in his original complaint, and, if a motion to make it more specific is filed, it would be his duty to make the amendment.").

We turn then to Willis's Petition to De-Certify the Election Results. Willis alleges that he lost to Crumbly by seventy-eight votes (4721 for Crumbly and 4643 for Willis) and that he would have won the election but for the fraudulent votes cast for Crumbly. His petition is eleven pages in length and contains an Exhibit A, which is ten pages in length and contains 265 voter names and addresses. To the side of each name and address in Exhibit A are four reasons for challenging the votes — Signature, No Signature in the book, Miscellaneous Other, and Double Voting. Exhibit A also notes that 173 ballots were not found.

The body of the Willis petition states the following regarding Miscellaneous Other voter irregularities, as well as other deficiencies in the voting process:

> B. At least one nursing home resident "voted" on the signature of his wife — he having been in a nursing home, and incompetent. The procedures required by ACA § 7-5-403(b) were not followed, and as a result, his vote was counted for Crumbly. The votes of other nursing home residents who purportedly voted by absentee were counted, despite the fact that mandatory statutory procedures governing absentee ballots were not observed. See all voters listed in Exhibit "A" column marked "miscellaneous other" and ACA § 7-5-411.

> C. The clerk failed to mail out approximately 60 absentee ballots that had been requested by absentee voters.

> D. She automatically sent out absentee ballots that had not been requested, merely because she had sent them out in the past.[3]

> E. She or her employees routinely allowed bearers of absentee ballots to take absentee ballots from her office without signing for them in the "bearer book." (This violates ACA § 7-5-409[a]).

---

[3] "Plaintiff does not refer here to absentee ballots automatically sent out to voters who had requested absentee ballots in the primary election three weeks before; he is referring to absentee ballots requested more than one year prior to this election." Appellant's Petition to De-Certify, p. 4, n. 4.

F. She or her employees routinely allowed bearers of absentee ballots to take more than two (2) absentee ballots from her office, in violation of law.[4]

G. During the early voting process, she did not insist that voters show picture identification to poll workers, thus allowing impersonators to vote in the runoff election.

H. During the voter registration process, she allowed voters to list more than one residence, which allowed them to vote twice in this election.

I. She allowed former residents of St. Francis County who have moved outside the county, or outside the state to vote, without any affirmative effort being made to determine whether they were also voting in the state or county of their new residence. This allowed non-residents in this election to vote improperly. (See Exhibit "A," "Misc other")

Section 7-5-411, which is specifically referenced in the quoted language from Willis's petition, sets the mandatory requirements for absentee ballots, including absentee voting methods for voters in long-term care and residential-care facilities and voters who are physically disabled. Section 7-5-409(f), which is also referenced in Willis's petition, describes the procedure for absentee voting, including the procedure for designated bearers. There are more than one hundred voters named with addresses that are challenged under the category of Miscellaneous Other in Exhibit A in addition to the forty-seven ballots challenged at the hearing for signature irregularities and double voting. Willis, therefore, has given names, addresses, a statutory reference for the challenge, and pointed specifically to procedural defects surrounding absentee votes by nursing home residents and others. In doing so, Willis not only alleged a valid cause of action in his petition, but he set out a *prima facie* case with sufficient facts to give the defendants reasonable information as to the grounds of the contest. *See Tate-Smith, supra*. In addition, he proffered absentee applications and voter statements in binders purport to show why and how the ballots were illegal.

---

[4] "ACA § 7-5-409(f)" Appellant's Petition to De-Certify, p. 4, n. 5.

The following colloquy at trial, however, illustrates the circuit judge's faulty understanding about amending the petition as opposed to providing proof to make allegations more definite and certain:

> THE COURT: It's not complicated to me. Show it to me in the complaint. If it's there, you can put it on. If it is not there, the objection is sustained.
>
> MR. EASLEY (Counsel for Willis): I understand, your Honor, may I proceed.
>
> THE COURT: You may proceed.
>
> BY MR. EASLEY, continuing:
>
> Q Tell me where we are.
>
> A We are on number 15.
>
> Q 16?
>
> A Are we through with Earnestine Barksdale?
>
> Q I don't know. Let's see.
>
> A Number 15. We have two bearers.
>
> MR. LONG (Counsel for Election Commssion): Judge, that was my objection.
>
> THE COURT: Sustained unless it's in the complaint.
>
> MR. EASLEY: It's not. Yes, your Honor, we have miscellaneous other.
>
> MR. LONG: Judge, miscellaneous other doesn't get it. Miscellaneous other refers back to allegations made in his complaint. There is no allegation in his complaint that a vote is invalid because there was a bearer out and the bearer in. Miscellaneous other, if he's just going to grab that —
>
> THE COURT: Gentlemen, it's not complicated to me. If the Supreme Court wants to change the law that allows

a person to make a general allegation in a trial and describe this miscellaneous other act, however they want to describe it, that's up to them to do. I don't believe that's the law. The objection is sustained.

Willis was then precluded from presenting testimony from other voters in the Miscellaneous Other category, even while his petition expressly stated that these were absentee voters in nursing homes whose votes did not comply with procedures required under § 7-5-411 or other deficiencies under § 7-5-409.[5] The circuit judge later dismissed Willis's petition on the basis that Willis was attempting to amend his petition at trial.

■ We conclude, first, that the circuit judge abused his discretion in ruling that Willis was attempting to amend his complaint with a new cause of action by offering proof of absentee-ballot irregularities under the Miscellaneous Other category. We hold that Willis was perfectly within his rights to make his allegations of absentee-ballot irregularities for nursing home residents, in particular, more definite and certain by offering proof of those violations. *See Ptak v. Jameson, supra.*

In his appeal, Willis does not ask that this court declare him to be the winner of the run-off election or that the election be voided as unfair. That would be premature at this juncture. He merely seeks the opportunity to present his proof in support of the *prima facie* case alleged in his petition. Our holding allows him to do this.

## II. Amendment 81

Willis also claims that the circuit judge erred in granting a dismissal in favor of Crumbly in part because he could not prove for which candidate the challenged voters voted. Willis maintains that Amendment 81 to the Arkansas Constitution mandates the secrecy of individual votes and makes it impossible to determine for whom each voter voted. He contends that though he warned

---

[5] Willis proffered into evidence two binders, which include actual voting documents for the 265 challenged votes which, he contends, support his claims regarding the Miscellaneous Other category for nursing home voters and other absentee ballots.

the circuit judge that Amendment 81 had changed the law, the circuit judge relied on case law decided prior to the adoption of Amendment 81.[6]

Crumbly responds that Amendment 81 has no relevance to this case. He argues that there are two types of election contests — one in which the losing candidate contests the results of the election and seeks to oust and replace the winning candidate, and one in which the losing candidate contests the election in general and seeks to have the election declared void altogether. He contends that only in the first type of election contest where the losing candidate seeks to replace the winner does it matter how the challenged voters voted and that this case is of the second type of election contest. Crumbly insists that in this case, the circuit judge merely stated that Willis had failed to submit proof of how each challenged voter voted to emphasize the point that Willis failed to submit sufficient proof to prevail in either type of election contest.

Under Amendment 50, § 3 to the Arkansas Constitution, which has since been repealed, ballots were numbered, and those numbers were recorded by election officers when the ballots were presented in an election so that the specific vote of each voter could be traced in the event of an election contest. Amendment 81 repealed Amendment 50, § 3 in 2002, thereby ensuring the secrecy of individual votes. Following the adoption of Amendment 81, it became impossible to determine for whom a voter in an election voted by simply tracing the ballots by their numbers. As a result, a plaintiff in an election contest, though he or she is required to allege that the invalid ballots were cast for his or her opponent, is no longer able to prove at trial for whom the invalid ballots were actually cast under the old tracing system.

In the instant case, we hold that the circuit judge erred to the extent that he based his decision to grant Crumbly's motion for a dismissal on the failure of Willis to prove specifically how each challenged voter voted. From the record, it appears that the circuit judge did take Willis's failure in this regard into consideration. For example, during Willis's case, Crumbly objected and argued that Willis was attempting to amend his complaint by presenting evidence of facts not stated in the complaint. In sustaining Crumbly's objection, the circuit judge said:

---

[6] Amendment 81 was adopted at the November 2002 general election.

> [T]he court believes that this *McCastlain v. Elmore* [340 Ark. 365, 10 S.W.3d 835 (2000)] is very, very important in this case. It says Arkansas law does not allow an election contest complaint that was deficient when it is filed, i.e. let me be sufficient, name me the voters, show me the invalid ballots, *show me they voted for the other candidate*, and show me that there is a total sufficient number to change the outcome of the election.

(Emphasis added.)

Crumbly's counsel argued, in addition, during his motion for dismissal that "there has been no proof as to how any of these people voted." Finally, the circuit judge, in his written order granting Crumbly's motion for dismissal, stated:

> The plaintiff did not put on any proof indicating how the alleged irregular ballots were tallied *or for whom the ballots were cast* in the Senate District 16 race. Even if the Court were to agree with the plaintiff that all of the ballots called into question by the plaintiff were irregularly cast, and even if the Court assumed that each one of those ballots were cas[t] for the defendant, Jack Crumbly, there still would not be sufficient irregular ballots cast to change the outcome of the election.

(Emphasis added.)

The circuit judge clearly looked to old case law, which predated Amendment 81, and required proof of how the challenged voters voted. Without question, Willis should not have been required to present tracing evidence of how each challenged voter voted when he was foreclosed from doing so by Amendment 81.

### III. Ballot Illegality

We turn then to the question of how to prove ballot ineligibility. In *Womack, supra,* this court rejected Womack's argument that ballots should not be invalidated simply because voters violated our election laws by not indicating a reason for voting absentee on the election-ballot applications. In recognizing that there must be strict compliance with statutory provisions regarding the application for and casting of absentee ballots, we noted that the absentee-ballot applications form provided to each voter was clear and accurate, and nothing on the form prevented a voter from knowing what information was being requested, or

from properly inserting the requested information on the form. *Id*. In short, we concluded that where it can be determined that the ballots are illegal on their face, the votes must be invalidated. *Id*.

Adhering to the rational in *Womack*, Willis, as already stated, attached to his petition as Exhibit A a list of 265 voters, and he set out categories of alleged irregularities, including (1) signature problems, (2) no signature in book, (3) miscellaneous other, and (4) double votes. Willis also proffered two binders that contained 265 names, which identified the voter by name in an effort to establish how and why the ballots were alleged to be illegal. Both the attachment to the petition and the binders are self explanatory.

But there is also the question of how to prove for which candidate the illegal votes were cast. Because Amendment 81 of the Arkansas Constitution repealed Amendment 50, § 3 to ensure the secrecy of individual votes, it may appear to the appellees to be impossible to determine for whom a voter cast his or her ballot as is required by § 7-5-801 *et seq*. and Arkansas's longstanding precedent regarding election contests to purge illegal and fraudulent ballots. By approving Amendment 81, the people of Arkansas intended to secure the voter's right to a secret ballot by doing away with the tracing method provided under Amendment 50. And yet, there is nothing in Amendment 81 to protect the secrecy of the ballot for a person who casts an illegal or fraudulent ballot.

Other states have addressed this precise issue. In *Kiehne v. Atwood*, 604 P.2d 123, 127 (1979), the New Mexico Supreme Court explained:

> [I]n the case of illegal voters[,] [i]t is universally recognized that the right to examine the voters in such a case is in affirmance and vindication of the essential principle of the elective system, that the will of the majority of the qualified voters shall determine the right to an elective office, and that the testimony of the voter, after it has been shown that he voted illegally, is competent, and should be received by the court or jury for what it is worth. (Citation omitted.) The law protecting the secrecy of the ballot is intended to apply only to lawful voters, and does not ordinarily apply to or protect illegal voters, who can be required to testify as to how they voted at an election.

. . . .

Were the courts to close their doors to the reception of evidence as to how an illegal voter has voted, it would tend to promote fraud and encourage corruption. (Citation omitted.)

(citing *Montoya v. Ortiz,* 175 P. 335, 337–38 (1918)).[7] In *Appeal of Harper,* 456 S.E.2d 878, 880 (1995), the North Carolina Court of Appeals further reiterated this point, noting:

In *Boyer v. Teague,* 106 N.C. 576, 625, 11 S.E. 665, 679 (1890), our Supreme Court established that "[a]s between contestants for office . . . the testimony of the elector [i.e., the voter], if pertinent and relevant, is always admissible." In fact, the Court held, while an honest voter may not be compelled to disclose for whom he voted, as such compulsion would intrude upon the sanctity of the secret ballot system, an illegal voter may be so compelled, save an invoking of his right against self-incrimination. *Id.*

*See also* 29 C.J.S. *Elections* § 480 (2007); 26 Am. Jur. 2d *Elections* § 426 (2007).

■ In short, while Amendment 81 protects the secrecy of ballots, its intent is to protect an honest voter, not an illegal one. As a result, this court is convinced that in election contests, where there is evidence of an illegal ballot, the person who illegally voted can be forced to testify as to whom they voted, and such is permissible under Amendment 81. We reverse and remand this case for further proceedings in accordance with this opinion.

There are two other matters pending before this court in connection with this appeal. The first is Willis's motion for appointment of a special judge in the event of reversal and remand. We deny that motion. The second matter is also a motion by Willis to disqualify counsel for the Election Commission. That motion is also denied.

---

[7] As the New Mexico Supreme Court noted in *Kiehne v. Atwood, supra,* the case law of other states is overwhelming in holding that, although legal voters may not be compelled to disclose how they voted, illegal voters do not enjoy this same privilege. *See Sims v. Atwell,* 556 S.W.2d 929 (Ky. App. 1977); *Singletary v. Kelly,* 242 Cal. App. 2d 611 (1966); *Oliphint v. Christy,* 299 S.W.2d 933 (1957); *Wehrung v. Ideal School District No. 10,* 78 N.W.2d 68 (N.D. 1956); J.T.W., Annotation, *Privilege or Exemption of Voter Against Testifying as to Candidate for Whom He Cast His Vote, or as to His Vote on Submitted Questions,* 90 A.L.R. 1362 (1934).

Reversed and remanded. Motion for Appointment of Special Judge and Motion to Disqualify Counsel for the Election Commission are denied.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. Although this case has been a long time getting here, this court has shown its will to decide this election-contest case on its merits rather than dismissing it on the questionable procedural issues offered by the appellees, Crumbly and the St. Francis County Election Commission. The winners are the voters of Arkansas, because they now can be assured that, in future elections, illegal and fraudulent votes can be purged from election results that are proved to be questionable. Today's decision sets out a clear "road map" by which the integrity of our election system can be assured.

While I fully agree with the court's opinion, I do not agree that the circuit judge should sit on this case on remand.

For whatever reasons, the Judge failed to expedite this election case even though he was required to do so by law, and was asked to do so repeatedly by Willis's counsel. It has taken about seven months to reach this stage of the election contest, and the case still must be remanded for further proceedings with no assurance anything different will occur to get this matter resolved. Even though the Judge had this matter pending for the seven-month period, he omitted it from his quarterly report which is required by this court's Administrative Order No. 3. This court should promptly assign a special judge who has the time and "grit" to bring this case to an end.[1]

---

[1] Willis also requests that the prosecuting attorney, representing the St. Francis County Election Commission, should be disqualified because of a conflict of interest. If that is a real issue, a newly assigned special judge can handle it with dispatch.