COLUMBIA NATIONAL INSURANCE COMPANY *v.*
Gary FREEMAN and Peggy Freeman

01–614                                          64 S.W.3d 720

Supreme Court of Arkansas
Opinion delivered January 17, 2002

Appeal from Cleburne Circuit Court; *John Dan Kemp*, Judge;

*Robert J. Donovan*, for appellant.

*Belew & Bell*, by: *John M. Belew*; *Bell & Associates, P.A.*, by: *Harvey L. Bell*; and *Scott Ellington*, for appellees.

RAY THORNTON, Justice. On October 27, 1997, a fire caused major damage to Circle F Trading Company, a western wear and general store, owned and operated by appellees, Gary and Peggy Freeman. The Freemans were insured against losses to the building, its contents, continuing business expenses, and other coverage, by appellant, Columbia National Insurance Company. Appellant responded promptly to the notice of the fire and concluded that the inventory was destroyed.

Before it would pay for appellees' continuing business expenses, appellant requested that appellees provide it with an itemization of those business expenses. Appellees provided an itemized list of expenses, but it is disputed whether the actual bills and invoices were submitted to appellant. No payment for business expenses, including the mortgage payment, was ever made by appellant.

Appellant sought to locate a mobile building to serve as a temporary office for Circle F's continuing operations, but no such building was provided. Because the first inventory of the merchandise was based upon the retail value of the merchandise and amounted to $107,905.13, appellant obtained a second appraisal of the inventory of $71,231.69.

On December 5, 1997, appellant paid appellees $77,892.28 for inventory, supplies, lost income, and damaged feed. No payment was made for continuing business expenses, and no temporary office facility was provided. There was a disagreement between the parties as to whether an agreement was reached in late December of 1997 as to a settlement of $32,725 for the cost of repairing the building. However, in January of 1998, appellant tendered a check in the amount of $ 26,180.02, representing eighty percent of the $32,725. Appellees rejected the check. Circle F Trading Company never reopened.

On May 14, 1998, appellees filed a complaint in the Circuit Court of Cleburne County. The complaint alleged three causes of action: (1) breach of contract; (2) the tort of bad faith; and (3) tortious interference with contract/business expectancy. At trial, the court determined that there was sufficient evidence of bad faith to submit that issue to the jury. The case was submitted to the jury on two interrogatories. The issue before the jury was whether appellant had acted in bad faith in its dealings with appellees. The jury returned a verdict for appellees and awarded $170,000 in compensatory damages and $200,000 in punitive damages.

Appellant brings this appeal, raising seven points for our consideration. We find no error and affirm the trial court on all points.

We first consider whether the trial court erred in denying appellant's motion for directed verdict on the issue of bad faith. Specifically, appellant argues that there was insufficient evidence to establish that appellant acted in bad faith. When reviewing a denial of a motion for a directed verdict, we determine whether the jury's verdict is supported by substantial evidence. *State Auto Property and Casualty Ins. v. Swaim*, 338 Ark. 49, 991 S.W.2d 555 (1999). Substantial evidence is defined as evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond mere suspicion or conjecture. *Id.* In determining whether substantial evidence exists, we have stated that we will rely upon two crucial principles to avoid invading the province of the jury. *Wheeler Motor Co. v. Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993). First, the court will consider only the evidence favorable to the successful party below, and second, the court will defer to the jury's resolution of the issue unless we can say that there is no reasonable probability to support the version of the successful party below. *Id.* Additionally, in reviewing the evidence, the weight and value to be given the testimony of the

witnesses is a matter within the exclusive province of the jury. *Rathbun v. Ward*, 315 Ark. 264, 866 S.W.2d 403 (1993).

■ Remaining mindful of our standard of review, we must now determine whether there was sufficient evidence to support the jury's verdict that appellant acted with bad faith in its dealings with appellees. An insurance company commits the tort of bad faith when it affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured. *Swaim, supra.* We have defined "bad faith" as dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge. *Id.* Mere negligence or bad judgment is insufficient so long as the insurer is acting in good faith. *Id.* The tort of bad faith does not arise from a mere denial of a claim; there must be affirmative misconduct. *Id.*

In *State Auto Property and Casualty Ins. v. Swaim*, 338 Ark. 49, 991 S.W.2d 555 (1999), we reviewed our prior cases dealing with the issue of bad faith and explained the circumstances under which an insurance company acted in bad faith. In *Swaim*, we also explained the circumstances under which an insurance companies was not acting in bad faith. Specifically, we explained:

> [W]e have held that nightmarish red tape, an abrupt attitude evidenced by an insurance representative about higher premium costs following cancellation of a group policy, and confusion over the referral process did not amount to bad faith. *See American Health Care Providers v. O'Brien, supra.* Nor did the fact that an insurance company waited three months to investigate a claim. *See Reynolds v. Shelter Mut. Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993).
>
> Examples of cases where we have found substantial evidence of bad faith include where an insurance agent lied by stating there was no insurance coverage (*Southern Farm v. Allen, supra*); aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's wrecked car; (*Viking Insurance Co. v. Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992)); and where a carrier intentionally altered insurance records to avoid a bad risk (*Employers Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984)).

*Swaim, supra.*

■ Turning to the case now on review, we must determine whether there was sufficient evidence to submit to the jury the issue

of bad faith. First, appellees argue that appellant acted in bad faith when it failed to pay appellees' ongoing business expenses. These expenses included utility bills and appellees' mortgage payment. Bill Green, an insurance adjuster who worked for appellant, was responsible for providing appellees money to cover their ongoing business expenses. He testified that he asked appellees to provide him documentation of the ongoing business expenses before he could pay the expenses. Mr. Freeman and Mrs. Freeman each testified that they had made the requested copies of the bills and mailed the documentation to Mr. Green. Mr. Green testified that the only documentation he received from appellees was a handwritten list of bills, that he determined that this was inadequate documentation, and that he declined to pay appellees' ongoing business expenses. The issue whether appellant received appropriate documentation is one for the factfinder to resolve based upon the credibility of the witnesses. There was sufficient evidence for the jury, without resorting to suspicion or conjecture, to determine whether adequate documentation had been provided, and to support a finding that failure to cover appellees' ongoing business expenses, to which they were entitled, was an act of bad faith.

Next, appellees contend that appellant acted in bad faith when it failed to provide appellees with a temporary location for their business. Sufficient evidence was admitted to present to the jury the question of whether appellant's agent agreed to provide a trailer for appellees to use, researched the cost of providing such a service, and then failed to go forward with the agreement.

Additionally, appellees argue that appellant was acting in bad faith when it failed to comply with an agreement reached between the parties on the issue of cost for building repairs. Evidence was introduced that appellant's agent and appellees agreed in late December 1997 upon the sum of $32,725 for the cost of repairing the building but that after entering into this agreement, appellant tendered only eighty percent of the amount agreed upon. There was sufficient evidence of such an agreement to submit to the jury the question of whether an agreement was entered into by the parties and then breached by appellant.

Appellees next argue that the jury had sufficient evidence to support a conclusion that appellant acted in bad faith by altering appellees' claim file. Appellees identify two events that indicate that appellant was altering appellees' file. First, appellees argue that appellant's employee purposely misplaced documents which detailed disputed events. Appellees argue that these documents were

missing because they contained critical information involving the parties attempting to negotiate appellees' claims. Next, appellees argue that a second file known as a "dummy file" was established on their claim in bad faith. Once again, these assertions reflect a question of credibility that the jury could consider in its evaluation of appellant's alleged acts of bad faith.

■ Appellees further argue that appellant falsely accused them of being uncooperative. Appellees claimed that a letter written by one of appellant's employees addresses this issue.[1] The letter warned appellees that if they failed to fulfill certain obligations in their insurance policy, then any settlement offer from appellant was at risk of being reduced. Appellees also contend that appellant falsely considered appellees to be uncooperative because they hired an attorney. They claim that this position was discussed in correspondence between appellant's employees. The correspondence discussed that appellees' claim was very complicated and that it was further "complicated by [appellees] hiring an attorney." This evidence could be considered by the jury in determining whether appellant's actions were the result of "ill will."

■ Finally, appellees argue that appellant acted with bad faith when it requested that two appraisals be performed on appellees' inventory and chose to pay appellees based on the lower of the two appraisals.

■ After reviewing the testimony and the alleged acts of bad faith, we hold that the trial court properly denied appellant's motion for directed verdict. Specifically, we conclude that there was substantial evidence to support the jury's verdict that appellant's actions constituted oppressive conduct carried out with a state of mind characterized by ill will. Accordingly, the trial court's denial of appellant's motion for a directed verdict is affirmed.

■ ■ In appellant's second point on appeal, it argues that the trial court should have excluded documents written by Joe Hoelzeman, Richard Walls, and Steve Wenger. On appeal, we will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). Nor will we reverse a trial court's ruling on evidentiary matters absent a showing of prejudice. *Id.* Appellant

---

[1] We note that this letter was written by Joe Hoelzeman. However, the letter had Bill Green's name signed at the bottom. Mr. Green testified that he did not actually review or sign the letter.

argues that these documents should have been excluded because they include evidence of "subsequent remedial measures" which are inadmissible pursuant to Rule 407 of the Rules of Evidence.

Rule 407 provides:

> Whenever, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures if offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

*Id.*

An example of improper evidence showing a subsequent remedial measure may be found in *Carton v. Missouri Pacific Railroad Company*, 315 Ark. 5, 865 S.W.2d 635 (1993). In that case, appellant argued that the trial court should have admitted certain pictures. The pictures showed that after appellant was injured by falling on oil-soaked gravel appellee replaced the gravel with clean gravel. We held that the pictures were evidence that appellee had taken subsequent remedial measures and affirmed the trial court exclusion of the evidence. *Id. See also Lawhorn v. Aryes Corporation*, 67 Ark. App. 66, 992 S.W.2d 162 (1999).

In the case now on review, appellant sought to exclude three documents. First, a letter written by Joe Hoelzeman on February 17, 1998. The letter states that appellees have hired an attorney and requests that the claim be transferred to a new adjuster. The second document was a report written on March 11, 1998, from Richard Walls to appellant. This document reviews the status of appellees' claim. The third document appellant sought to exclude was a memo to the file written by Steve Wenger and dated April 8, 1998. This memo once again reviews appellees' claims and discusses possible problems appellant may encounter in the negotiation process such as taking an across the board depreciation on all property. The final document appellant sought to exclude was Joe Hoelzeman's response to Steve Wenger's memo. The response seeks to correct a mistake made in the Steve Wenger's memo and acknowledges that the across the board depreciation on all items is no longer a company policy. After reviewing the documents that appellant sought to exclude, we conclude that the documents do

not contain any evidence of subsequent remedial measures. Specifically, the documents do not describe measures which had appellant taken previously would have' made an event less likely to occur. Accordingly, we affirm the trial court.

In appellant's third point on appeal, it argues that the trial court erred when it allowed appellee Gary Freeman to testify about whether he could afford to rebuild his business. Appellant argues that his testimony should have been excluded because it was not relevant pursuant to Rule 401 of the Rules of Evidence. Rule 401 states that " 'relevant evidence' means evidence having tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have held that a trial court's ruling on relevancy is entitled to great weight and will not be reversed absent an abuse of discretion. *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999).

The testimony appellant sought to exclude is as follows:

MR. BELEW [*appellees' attorney*]: Did you have any money to repair the building?

MR. DONOVAN [*appellant's attorney*]: Objection, your honor, it's not relevant under the terms of the policy.

MR. BELEW: Your, honor, it certainly is relevant. He hadn't been paid for his building. And the question is did he have the economic ability to put his building back without his insurance proceeds. That's the question.

THE COURT: Objection will be overruled.

MR. BELEW: Do you have the money to build your building back?

GARY FREEMAN [*appellee*]: No sir.

Appellees' , contend that this testimony was relevant because it established: (1) that appellees did not have the money to replace their business without receiving their insurance proceeds; and (2) that appellees had not yet received these proceeds. We cannot say that the trial court abused its discretion by admitting this evidence.

In appellant's fourth point on appeal, it argues that the trial court should have granted its motion for directed verdict on count I of appellees' complaint. Count I of appellees' complaint was a claim for breach of contract. Specifically, appellant argues that appellees failed to provide sufficient evidence that appellant breached its contract with appellees.

Appellees respond by arguing that we should not consider this argument on appeal because appellant withdrew its motion for directed verdict on count I and agreed to submit this issue to the jury. *See Mine Creek Contractors, Inc. v. Grandstaff*, 300 Ark. 516, 780 S.W.2d 543 (1989) (holding that a party cannot concede an issue at trial and then raise it on appeal). After reviewing the colloquy between the attorneys and the trial court, we agree with appellees that appellant withdrew its motion for directed verdict on count I of appellees' complaint and agreed to submit the issue to the jury.

However, we note that the issue was not submitted to the jury. The trial court did not instruct the jury on a breach of contract claim. Moreover, the jury did not consider a breach of contract claim or render a verdict on a breach of contract claim. Specifically, the verdict form submitted to the jury contained two interrogatories both dealing with the issue of bad faith. The first interrogatory provided: "[D]o you find from a preponderance of the evidence that Columbia National Insurance Company is guilty of bad faith?" The second interrogatory provided: "If you have answered interrogatory no. 1 'yes' then you may assess those damages, if any, that you find were proximately caused by the bad faith of Columbia National Insurance Company." Because appellant agreed to withdraw its motion for directed verdict on count I of appellees' complaint, and because the jury did not render a verdict based on appellees' breach of contract claim, we decline to address this issue on appeal.

In appellant's fifth point on appeal, it argues that the trial court erred in denying its motion for judgment notwithstanding the verdict. Specifically, appellant argues that there was insufficient evidence to support the award of $170,000 in compensatory damages. A motion for judgment notwithstanding the verdict is technically only a renewal of the motion for directed verdict made at the close of the evidence. *Wheeler, supra.*

After reviewing the evidence, we conclude that there was sufficient evidence to support the jury's award of $170,000. At trial, appellees offered evidence of underpayment in inventory, costs to

repair the building, loss of income, and normal operating expenses. Considering the testimony in the light most favorable to appellees, there was evidence that appellees incurred operating expenses in the amount of approximately $35,000 a year, based on the testimony of Wade Turner, appellees' certified public accountant. Mr. Turner testified that appellees incurred $2,926 a month in normal operating expenses, and that appellees lost $22,000 a year in net income for four years. The cost to repair the building was $32,725. Deducting the amount paid by or tendered by appellant, there was evidence that the total of appellees' compensatory damages exceeded $170,000. Because the jury's award of $170,000 in compensatory damages is supported by the evidence, we conclude that the trial court did not err in denying appellant's motion for judgment notwithstanding the verdict.

In its sixth point on appeal, appellant argues that the trial court improperly excluded testimony favorable to appellant. Specifically, appellant argues that the trial court improperly determined that certain testimony was hearsay and therefore inadmissable. The evidence appellant sought to have admitted involved statements made by employees at the Secretary of State's office to James Cunningham, appellant's employee. At trial, an issue of whether Columbia Insurance Group, Inc., was qualified to do business in Arkansas arose. Appellant wanted to admit the testimony to show that Columbia Insurance Group, Inc., was not registered to do business in Arkansas because someone at the Secretary of State's Office informed James Cunningham that it was not necessary for the company to register. The trial court did not allow Mr. Cunningham to testify about what he was told by the employee at the Secretary of State's Office. Appellant's attorney proffered the content of Mr. Cunningham's testimony.

Pursuant to Rule 801(c) of the Rules of Evidence, "'hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Such testimony is inadmissible evidence unless it fits within one of the exceptions outlined in Rule 801. Rule 802 of the Rules of Evidence.

In the case now before us, the testimony appellant sought to have admitted was hearsay testimony which did not fit within any of the articulated exceptions to Rule 801. Specifically, appellant sought to have Mr. Cunningham testify about what he was told by an employee at the Secretary of State's Office. This testimony was

offered to explain why Columbia Insurance Group, Inc. was not authorized to do business in Arkansas.[2] Because the evidence constituted inadmissible hearsay, the trial court did not err by excluding James Cunningham's proffered testimony.

In appellant's final point on appeal, it argues that the trial court improperly admitted evidence concerning other claims against appellant. The parties agreed before trial that appellees would not offer evidence regarding other claims in which appellant was involved unless appellant "opened the door." During Roger Langster's testimony, appellees' attorney asked Mr. Langster: (1) if he had ever had a problem with Joe Hoelzeman; (2) if he had ever gone to Joe Hoelzeman's supervisors to get a claim resolved; and (3) if he had to call "the home office" to get assistance in dealing with matters. Appellant objected to these question arguing that appellees had violated the agreement regarding offering evidence about other claims in which appellant was involved. The trial court overruled appellant's objection and admitted the testimony. Next, Tommy Smith testified. Appellees' attorney asked Mr. Smith if Mr. Langster had told him that he had problems with Joe Hoelzeman. Appellant once again objected. The trial court allowed the testimony and issued a limiting instruction to the jury that the evidence could be considered solely for the purpose of determining whether appellant was guilty of bad faith or tortious interference.

On appeal, appellant contends that the cumulative effect of the testimony offered by Mr. Langster and Mr. Smith allowed the jury to infer that appellant was guilty of misconduct in other claims and that this inference prejudiced appellant. We note that appellant has failed to offer any citation to authority to support its position. *See City of Van Buren v. Smith*, 345 Ark. 313, 46 S.W.3d 527 (2001) (holding that this court does not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority). Additionally, we note that appellant does not explain how it was prejudiced by admission of the testimony. Accordingly, we hold that the trial court did not abuse its discretion when it allowed Mr. Langster and Mr. Smith to testify.

For the reasons we have stated, the trial court is affirmed.

IMBER, J., not participating.

---

[2] We note that Columbia Insurance Group, Inc. is not a party to this appeal.