Don J. SWITZER, Individually, and Don J. Switzer, Administrator of the Estate of Sandra Switzer, Deceased *v.*
SHELTER MUTUAL INSURANCE COMPANY

04-80 208 S.W.3d 792

Supreme Court of Arkansas
Opinion delivered May 26, 2005

*David A. Hodges* and *Mitch Cash*, for appellants.

*Matthews, Sanders & Sayes,* by: *Doralee Idleman Chandler* and *Roy Gene Sanders,* for appellee.

DONALD L. CORBIN, Justice. Appellant Don J. Switzer, Individually, and as Administrator of the Estate of Sandra Switzer, Deceased, appeals the judgment of the Searcy County Circuit Court, denying his motion for a new trial or judgment notwithstanding the verdict ("JNOV") and granting Appellee Shelter Mutual Insurance Company's motion for a directed verdict. On appeal, Switzer argues that the trial court erred in denying his motion because there was no evidence to support the jury's finding of an agency relationship, and the verdict was impermissibly inconsistent. He also argues that the trial court erred in granting Shelter's motion for directed verdict on the claim of bad faith. Shelter has cross-appealed, arguing that the trial court erred in failing to grant a directed verdict in its favor on Switzer's remaining claims. This case was certified to us from the Arkansas Court of Appeals, as involving an issue requiring clarification and development of the law; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(5).

This matter stems from an automobile accident that occurred on September 5, 1998, on U.S. Highway 65 near Greenbrier, Arkansas. On that day, Bobby Switzer was driving his mother's vehicle, while Sandra Switzer was a passenger. The pair had been to Conway on a shopping trip and were returning home when Sandra asked her son to stop at Colt's Quick Stop, so that she could buy a birthday present for his girlfriend. The Switzer vehicle was traveling north on Highway 65 when Bobby attempted to make a left-hand turn into Colt's. He did not see a vehicle traveling southbound on Highway 65 until after he began to make the turn. The southbound vehicle was driven by Mark Kirkpatrick. Also in the car were Karla and John Kirkpatrick, Mark's wife and son. The vehicles collided, and the force of the impact threw Sandra from her vehicle. She later died from the injuries she sustained in the accident.

The accident was reported to the Switzers' insurance agent, T.P. Hubbard, an employee of Shelter. A loss report was forwarded to Shelter's claim office and was assigned to claims adjuster Amber Wooten. The Kirkpatricks obtained counsel and presented Shelter with a claim for damages in the amount of $169,000.00. After reviewing the loss report, as well as the accident report in which the investigating officer attributed the accident to the fault of Bobby Switzer, Wooten recommended paying the policy limits

on the claim in exchange for releases protecting the Switzers from further claims. Wooten provided the Kirkpatricks with standard Shelter releases. The releases listed Don and Sandra Switzer, as well as Bobby Switzer. According to Shelter, Wooten did not notify or seek Switzer's permission to settle the Kirkpatrick claim.

On February 12, 1999, approximately three months after the releases were executed, Don Switzer, in his individual capacity, and as administrator of Sandra's estate, filed a wrongful-death lawsuit against Mark Kirkpatrick. Kirkpatrick deposed Switzer in connection with the suit. During his deposition, Switzer testified that he was aware that Shelter was going to pay the Kirkpatricks' claim. He testified that he learned of this information from his agent, Hubbard.

Following Switzer's deposition, Kirkpatrick filed a motion for summary judgment, arguing that the releases signed by the Kirkpatricks constituted a complete settlement of all disputes between the Switzers and the Kirkpatricks. Switzer filed a response, arguing that he did not have knowledge of, nor ever consented to, the settlement paid by Shelter. He claimed that his deposition testimony had been a mistake, because his agent did not tell him of the settlement until after it was completed. He also submitted affidavits from Hubbard and Wooten supporting his contention that he did not learn of the settlement until after it had been completed. Moreover, the affidavits stated that Switzer knew nothing of the settlements, nor did he have anything to do with the settlements. Nevertheless, the trial court granted Kirkpatrick's motion for summary judgment, finding that Switzer was aware of the settlement and failed to object to it. Switzer did not appeal this order.

Thereafter, on October 2, 2001, Switzer filed the present suit against Shelter, alleging that it negligently prepared the releases and failed to preserve his right to sue Kirkpatrick. His complaint alleged that Shelter was negligent and acted in bad faith. The case proceeded to trial. In order to determine whether Switzer could prevail in his negligence action against Shelter, it was necessary for the parties to try the merits of the underlying tort case. Thus, the jury heard evidence regarding the accident that occurred on September 5. At the close of Switzer's case, Shelter moved for a directed verdict on all claims. With regard to the claim of bad faith, Shelter argued that there was no evidence presented to establish the required elements of bad faith. The trial court agreed and directed a verdict in Shelter's favor on this claim. In so ruling,

the trial court noted that the proof, even viewed in a light most favorable to Switzer, did not establish that Shelter was malicious or offensive in its handling of the claim.

Shelter also moved for a directed verdict on the negligence claim, arguing that Switzer's right to file suit against Kirkpatrick was not legally estopped by the releases and that Switzer's own actions of testifying during the deposition that he knew of the settlement and failing to appeal the order granting Kirkpatrick's motion for summary judgment prevented him from pursuing his claims. The trial court denied this motion, and the matter was submitted to the jury on interrogatories.

The jury subsequently found that Shelter had been negligent with regard to the September 5, 1998, accident and awarded damages in the amount of $100,000.00 to Switzer, in his individual capacity, to the estate in the amount of $1,000.00, and $50,000.00 to each of Switzer's sons. The jury also apportioned fault as sixty-seven percent to Bobby Switzer and thirty-three percent to Mark Kirkpatrick. The jury further found that Bobby was acting as Sandra's agent at the time of the accident, thus his negligence was imputed to her. As a result, the trial court entered judgment on behalf of Shelter, because Switzer would not have prevailed in an action against Kirkpatrick.

Following the trial, Switzer submitted a motion for new trial and JNOV on July 21, 2003. In this motion, Switzer argued that either a new trial was warranted or that he was entitled to JNOV because the jury's verdict that Bobby was acting as an agent for Sandra at the time of the accident was clearly contrary to the preponderance of the evidence. He also argued that the jury's verdict was impermissibly contradictory because the jury found that there was no joint enterprise but that there was an agency relationship. In support of his motion, Switzer argued that this court's decision in *Yant v. Woods*, 353 Ark. 786, 120 S.W.3d 574 (2003), also warranted entry of judgment on his behalf because this court indicated its displeasure with the theory of joint enterprise. He also asserted that a new trial was warranted on the basis that the trial court committed an error of law when it granted Shelter's motion for directed verdict on the claim of bad faith.

The trial court denied Switzer's motion for a new trial and JNOV in a letter order dated August 11, 2003. In that letter order, the trial court stated that Switzer was not "procedurally entitled to JNOV." There was no mention of the motion for new trial. Thereafter, Switzer filed a timely notice of appeal.

For his first point on appeal, Switzer argues that the trial court erred in denying his motion for a new trial or JNOV, because there was no evidence to support the jury's decision to impute Bobby's negligence to his mother Sandra, a passenger at the time of the accident. According to Switzer, the imputation doctrines of joint enterprise and agency are virtually indistinguishable, and the jury's verdict that there was no joint enterprise is inconsistent with its subsequent finding that an agency relationship existed between Bobby and Sandra. Switzer further argues that the evidence to support a finding of agency must show that Sandra exercised control, and because there was no such evidence, the trial court erred in denying his motions. Shelter counters that Switzer failed to preserve this argument for appellate review. Alternatively, Shelter argues that the trial court did not err in denying the motion because the jury's verdict was supported by ample evidence.

■ As a threshold issue, this court must determine whether Switzer has preserved his motion for a new trial and JNOV. Shelter argues that neither is preserved. At the outset, we note that it is unnecessary for us to analyze the issue of whether Switzer's motion for JNOV was preserved, because at oral argument before this court, counsel for Appellant conceded that he did not move for a directed verdict at trial and, therefore, admitted that his motion for JNOV is not preserved for appellate review.

We next turn to Switzer's motion for a new trial. A motion for new trial is governed by Ark. R. Civ. P. 59(a), which provides in relevant part:

> A new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: . . . (6) the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law[.]

■■ We have explained that when determining whether a new trial is merited pursuant to this rule, the trial court has limited discretion because it may not substitute its view of the evidence for the jury's except when the verdict is clearly against the preponderance of the evidence. *Carlew v. Wright*, 356 Ark. 208, 148 S.W.3d 237 (2004); *Young v. Honeycutt*, 324 Ark. 120, 919 S.W.2d 216 (1996). On appeal from a denial of a motion for a new trial, the appellate court affirms the verdict if it is supported by substantial evidence. *Dovers v. Stephenson Oil Co., Inc.*, 354 Ark.

695, 128 S.W.3d 805 (2003). Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Wal-Mart Stores, Inc. v. Lee,* 348 Ark. 707, 74 S.W.3d 634 (2002).

Even though this court reviews the denial of a motion for new trial under a sufficiency-of-the-evidence standard, the motion itself must aver that a new trial is warranted on the basis that the jury's verdict was clearly against the preponderance of the evidence. *Wal-Mart Stores, Inc. v. Tucker,* 353 Ark. 730, 120 S.W.3d 61 (2003). In *Tucker,* this court explored the issue of whether an appellant was making a sufficiency argument under the guise of a motion for new trial. The distinction was important because in *Tucker,* as in this case, the appellant did not move for a directed verdict below and, thus, failed to preserve any challenge to the sufficiency of the evidence. In addressing this issue, the court stated:

> The distinction between a motion for new trial and a directed-verdict motion is a fine one. When a defendant makes an argument that the verdict is clearly against the preponderance of the evidence because the evidence is insufficient to establish one element of a *prima facie* case to support the cause of action, that argument is in substance a challenge to the sufficiency of the evidence.

> In 1983, Rule 50 was amended and we stated: "Rule 50 will no longer allow the sufficiency of the evidence to be challenged by a motion for a new trial, only by a motion for a directed verdict and motion for judgment notwithstanding the verdict." *In re Amendments to the Rules of Civil Procedure,* 279 Ark. 470, 471, 651 S.W.2d 63 (1983); *see also Majewski v. Cantrell,* 293 Ark. 360, 737 S.W.2d 649 (1987) ("[A] party must test the sufficiency of the evidence by motions for directed verdict and judgment notwithstanding the verdict, not by a motion for new trial."). In *Yeager v. Roberts,* 288 Ark. 156, 702 S.W.2d 793 (1986), we enunciated the subtle distinction between a sufficiency challenge under Rule 50 and a motion for new trial under Rule 59. We stated that "[a] party does not have to make a motion testing the sufficiency of the evidence to go to the jury as a prerequisite to making a motion for a new trial." *Yeager v. Roberts,* 288 Ark. at 157, 702 S.W.2d at 794. A motion for a new trial under Rule 59 based on the verdict being clearly contrary to the preponderance of the evidence does not test the sufficiency of the evidence, and is not precluded by Rule 50(e). *Yeager v. Roberts,*

*supra*; *see also* Ark. R. Civ. P. 50 Addition to Reporter's Notes, 1983 Amendment ("Rule 50(e) is amended to omit the reference to the motion for new trial as a means of challenging the sufficiency of the evidence. Motions for directed verdict and judgment notwithstanding the verdict are used to challenge the sufficiency of the evidence.").

*Id.* at 738, 120 S.W.3d at 66 (footnote omitted). This court in *Tucker* ultimately concluded that the appellant's motion for a new trial was actually a challenge to the sufficiency of the evidence supporting the proximate-cause element of the underlying cause of action. Because the appellant had failed to move for a directed verdict at the close of all the evidence, it waived any question pertaining to the sufficiency of the evidence on appeal.

A similar result was reached by the Arkansas Court of Appeals in *Benton v. Barnett*, 53 Ark. App. 146, 920 S.W.2d 30 (1996). In that case, the appellant moved for a new trial based on the argument that there was insufficient evidence to support an element of the cause of action. The court of appeals held that the argument was not preserved for appellate review because the appellant never challenged the sufficiency of the evidence and could not do so for the first time on appeal via a motion for new trial.

Thus, the issue now facing this court is whether Switzer's motion for a new trial is actually an attack on the sufficiency of the evidence. Contrary to Shelter's assertion, Switzer argues that his motion properly challenges the preponderance of the evidence supporting the jury's verdict. A review of the motion for new trial reveals that one of the grounds listed in support of a new trial was that the jury's verdict was "clearly contrary to the preponderance of the evidence or is contrary to the law." However, the brief submitted in support of the motion for new trial reveals that the underlying arguments raised by Switzer are actually challenges to the sufficiency of the evidence. Some of those arguments include:

> [T]he only fact that the jury could consider was the fact that Sandra Switzer co-owned the car and was a passenger in it at the time of the occurrence. The instruction states this fact "may" be considered "along with any other evidence in the case." There was no other evidence to establish an agency relationship. By finding agency, the jury improperly relied on only the fact that the owner of the vehicle was a passenger when the accident occurred. In a typical agency situation, more must be established.

. . . .

Since the jury was properly instructed on joint enterprise and agency, the jury's findings must be challenged based on a lack of evidence of control. Bobby Switzer was authorized to drive the car in which Sandra Switzer was riding. The issue would be whether the burden of showing she remained in control of the vehicle was met by the party asserting the agency decision.

. . . .

Although there is a rebuttable presumption or inference of a right of control where the owner is present in a motor vehicle, the evidence presented at trial was sufficient to overcome this presumption.

And, in his brief to this court, Switzer also argues his motion for new trial in the context of a sufficiency challenge. In his introductory portion of his argument, Switzer states:

Thus, the judge abused his discretion by failing to review the evidence on the motion for a new trial. Had he done so, he should have found that there was simply no evidence of conduct, on passenger Sandra Switzer's part, that could have served to justify the finding that Bobby Switzer was her agent.

. . . .

There was similarly no evidence here. Shelter has utterly failed as a matter of law to sustain its burden to show "control" by a preponderance of the evidence.

■■ In sum, the arguments made to the trial court in the motion for new trial, and carried over to this court on appeal, amount to a challenge of the sufficiency of the evidence. Specifically, Switzer is arguing that a new trial was warranted because Shelter failed to present evidence on the issue of control necessary to prove an agency relationship and, therefore, the jury could not have properly determined that an agency relationship existed in this case. This argument should have been raised in a motion for directed verdict at the close of all the evidence. A party's failure to move for a directed verdict at the conclusion of all of the evidence because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to

support the jury's verdict. *Lee*, 348 Ark. 707, 74 S.W.3d 634. Accordingly, Switzer's failure to object to the sufficiency of the evidence now precludes this court from considering this argument.

For his second point on appeal, Switzer argues that the jury's verdict was contradictory and should be reversed. Specifically, he contends that it was error for the jury to find that there was no joint enterprise, but also to find that an agency relationship existed, because such a verdict was impermissibly contradictory. In support of this argument, Switzer avers that the imputation doctrines of agency and joint enterprise should be abolished in situations such as the present one where the owner of a vehicle is also a passenger at the time of accident. Shelter argues that the jury's verdict was not impermissibly contradictory as the elements of joint enterprise differ from the elements of agency.

It is unnecessary for this court to address the merits of this argument, as Switzer has raised this argument for the first time in his motion for a new trial. This court has repeatedly held that an objection first made in a motion for new trial is not timely. *Tate-Smith v. Cupples*, 355 Ark. 230, 134 S.W.3d 535 (2003); *see also Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002). Any error argued on appeal must have first been directed to the trial court's attention in some appropriate manner, so that the court has an opportunity to address the issue. *Stacks v. Jones*, 323 Ark. 643, 916 S.W.2d 120 (1996). A party cannot wait until the outcome of a case to bring an error to the trial court's attention. *Jones v. Double "D" Properties, Inc.*, 352 Ark. 39, 98 S.W.3d 405 (2003).

Here, Switzer initially voiced an objection to the jury being instructed on the agency theory. He withdrew that objection after Shelter argued to the contrary that such an instruction was warranted. In fact, counsel for Switzer stated:

> Okay, . . . I'll retreat. I withdraw my objection. I want a clean record, . . . I don't think a jury's gonna spend a lot of time on agency or joint enterprise, but I'm gonna object to joint enterprise, but . . . I assume the Court will give it.

Thus, not only did counsel withdraw his objection with regard to the agency instruction, he never offered any specific reasons for objecting to an instruction on joint enterprise. Moreover, there was certainly no argument ever made to the trial court that the doctrines of agency and joint enterprise were not applicable to the situation at hand. In the absence of such an argument

to the trial court, Switzer cannot argue it on appeal as the basis for reversing the jury's verdict. Accordingly, this court cannot address the merits of Switzer's argument on this point.

For his final point on appeal, Switzer argues that it was error for the trial court to grant Shelter's motion for a directed verdict on his claim for bad faith. According to Switzer, Shelter was under an affirmative duty to protect his interests when negotiating the settlement and the execution of the releases with the Kirkpatricks. He avers that Shelter's actions failed to preserve his rights to sue for damages caused by Mark Kirkpatrick's negligence. Shelter counters that the trial court was correct in granting its motion for a directed verdict on the issue of bad faith because there simply was no evidence that it acted with malice or ill will in its dealings with Switzer. We agree with Shelter.

At the conclusion of Switzer's case, Shelter moved for a directed verdict on all counts. It specifically argued that there was no evidence supporting the claim of bad faith, because there was no evidence that Shelter had acted with a malicious intent or ill will in order to cheat Appellant out of a legitimate claim. The trial court agreed, stating that the evidence, even when viewed in a light most favorable to Appellant, did not rise to the required level to prove that Shelter was malicious or offensive in their handling of the Switzer claim.

In deciding whether the grant of a motion for directed verdict was appropriate, appellate courts review whether there was substantial evidence to support the circuit court's decision. *See, e.g., Ward v. Williams*, 354 Ark. 168, 118 S.W.3d 513 (2003); *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 61 S.W.3d 835 (2001). A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *Mangrum v. Pigue*, 359 Ark. 373, 198 S.W.3d 496 (2004); *Curry v. Thornsberry*, 354 Ark. 631, 128 S.W.3d 438 (2003); *Mankey v. Wal-Mart Stores, Inc.*, 314 Ark. 14, 858 S.W.2d 85 (1993). Stated another way, a motion for a directed verdict should be granted only when the evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. *Curry*, 354 Ark. 631, 128 S.W.3d 438; *Congra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 150 (2000). Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Howard v. Hicks*, 304 Ark. 112, 800 S.W.2d 706 (1990). It is not the province of this court to

try issues of fact; rather, we simply examine the record to determine if there is substantial evidence to support the jury's verdict. *City of Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481 (2000).

 An insurance company commits the tort of bad faith when it affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured. *Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, 64 S.W.3d 720 (2002); *State Auto Prop. & Cas. Ins. v. Swaim*, 338 Ark. 49, 991 S.W.2d 555 (1999). We have defined "bad faith" as dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge. *Id.* Mere negligence or bad judgment is insufficient so long as the insurer is acting in good faith. *Freeman*, 347 Ark. 423, 64 S.W.3d 720. Moreover, the tort of bad faith does not arise from the mere denial of a claim; rather, there must be affirmative misconduct on the part of the insurer. *Id.*

In *Columbia*, this court recently discussed the distinctions between actions that constitute bad faith and those that do not. There, we stated:

> In *State Auto Property and Casualty Ins. v. Swaim*, 338 Ark. 49, 991 S.W.2d 555 (1999), we reviewed our prior cases dealing with the issue of bad faith and explained the circumstances under which an insurance company acted in bad faith. In *Swaim*, we also explained the circumstances under which an insurance compan[y] was not acting in bad faith. Specifically, we explained:
>
> > [W]e have held that nightmarish red tape, an abrupt attitude evidenced by an insurance representative about higher premium costs following cancellation of a group policy, and confusion over the referral process did not amount to bad faith. *See American Health Care Providers v. O'Brien, supra.* Nor did the fact that an insurance company waited three months to investigate a claim. *See Reynolds v. Shelter Mut. Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993).
> >
> > Examples of cases where we have found substantial evidence of bad faith include where an insurance agent lied by stating there was no insurance coverage (*Southern Farm v. Allen, supra*); aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's wrecked

car; (*Viking Insurance Co. v. Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992)); and where a carrier intentionally altered insurance records to avoid a bad risk (*Employers Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984)).

*Swaim,* [338 Ark. at 58, 991 S.W.2d at 561].

*Id.* at 429, 64 S.W.3d at 723.

In *Columbia,* 347 Ark. 423, 64 S.W.3d 720, this court ultimately concluded that the trial court did not abuse its discretion by denying the motion for directed verdict where there was substantial evidence to support the jury's verdict that the insurer's actions constituted oppressive conduct carried out with a state of mind characterized by ill will. In that case, the evidence giving rise to an action for bad faith included: the insurer's failure to pay ongoing business costs or to provide a temporary location for the insureds' business; the insurer's failure to comply with a previously reached agreement regarding the issue of costs for building repairs; the insurer's alteration of the insureds' claim file and purposely misplacing documents related to the insureds' claim; and finally the insurer's false accusations that the insureds were being uncooperative, particularly after they hired an attorney to represent their interests.

 In the instant case, Switzer's claim regarding the issue of bad faith center on Shelter's failure to protect his interest to sue Kirkpatrick. The problem here is that Switzer submitted no evidence of any affirmative misconduct on the part of Shelter in handling the Kirkpatrick settlement. To the contrary, the evidence indicated that Shelter investigated the Kirkpatricks' claim, reviewed the accident reports, and determined that it was in the best interest of its insured to settle the claim. As to Switzer's claim that the releases should have contained language reserving his right to sue Kirkpatrick, there was no evidence that the lack of such language actually prohibited Switzer from suing Kirkpatrick. Even if we were to assume that Shelter's omission of this language prevented Switzer from bringing a suit, it still does not rise to the level of bad faith. This court has held on several occasions that a mistake on an insurance carrier's part or negligence or confusion or bad judgment will not suffice to substantiate the tort of bad faith. *See, e.g., Swaim,* 338 Ark. 49, 991 S.W.2d 555; *Parker v.*

*Southern Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 935 S.W.2d 556 (1996); *Southern Farm Bureau Cas. Ins. Co. v. Allen*, 326 Ark. 1023, 934 S.W.2d 527 (1996).

To the contrary, the evidence in this case indicated that Switzer's suit was dismissed only after Appellant incorrectly testified that he was aware that Shelter was going to settle with the Kirkpatricks. Moreover, we agree with Shelter that our decision in *Fikes v. Johnson*, 220 Ark. 448, 248 S.W.2d 362 (1952), does not automatically support the trial court's position that such knowledge warranted dismissal of Switzer's claim against Kirkpatrick. In fact, the court in *Fikes* held that where an insurer settles a claim against the insured without his knowledge or consent, the insured may still maintain a cause of action against the tortfeasor. Despite the dubious ruling of the trial court, Switzer failed to appeal the order, choosing instead to go after Shelter. It would appear that this was a matter of strategy and certainly does not give way to evidence that Shelter acted with a malicious intent or ill will in their handling of the Kirkpatricks' claim. Accordingly, the trial court did not abuse its discretion in granting Shelter's motion for directed verdict on the claim of bad faith.

Shelter has filed a cross-appeal, arguing that the trial court erred in failing to grant its motion for directed verdict on Switzer's remaining claims for negligence. According to Shelter, it was entitled to judgment as a matter of law because its action of settling the Kirkpatricks' claim did not bar Switzer's action against Mark Kirkpatrick. Because we are affirming the judgment entered in Shelter's favor, it is unnecessary for us to address the merits of this cross-appeal as it is now moot.

Affirmed on direct appeal; cross-appeal moot.

DICKEY, J., not participating.