# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-15-218

|  |  |
|---|---|
| | **Opinion Delivered** December 2, 2015 |
| ANITA E. GLADDEN AND ALLEN H. GLADDEN, HUSBAND AND WIFE AND AS CO-TRUSTEES OF THE ANITA E. GLADDEN TRUST <br><br>APPELLANTS | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CV-2010-1187-II] |
| V. | HONORABLE VICKI SHAW COOK, JUDGE |
| TRUSTEES OF THE PRUITT FAMILY TRUST, MARK McCLURE AND KIM McCLURE, AND GARLAND COUNTY <br><br>APPELLEES | AFFIRMED |

**BART F. VIRDEN, Judge**

Anita E. Gladden and Allen H. Gladden, husband and wife and as co-trustees of the

Anita E. Gladden Trust (collectively, the Gladdens), bring this appeal from the order of the

Garland County Circuit Court awarding summary judgment to Mark McClure and Kim

McClure that rescinded a real-estate-purchase contract and awarded damages and attorney's

fees. The Gladdens also appeal from a separate order that set aside a county court order that had vacated a road adjacent to the Gladdens' property.[1] We affirm.

I. *Facts and Procedural History*

The Gladdens owned Lot 18 in the Kyler Estates subdivision of Garland County. To the west of the Gladdens' lot is Kyler Road, a county road that ends at Lake Hamilton. On the other side of the road is property owned by the Trustees of the Pruitt Family Trust (Pruitt or the trust). It is not entirely clear whether Kyler Road is part of the subdivision.

On January 27, 2010, the Gladdens filed a petition in the Garland County Court seeking to vacate the abandoned road adjacent to their property. The Gladdens gave notice to the trust and published notice in the local paper. On February 23, 2010, the county court issued an order declaring the road abandoned, and "returned and included in the description of Lot 18."

The Gladdens listed their property for sale. As part of listing their property for sale, the Gladdens executed a "Seller Disclosure Statement" on April 12, 2010. Among the statements in the Seller Disclosure that the Gladdens checked "no" were questions about whether they had any knowledge of features shared in common, such as driveways; common areas such as driveways or roads co-owned with or used by others; issues that would not be shown by a title search; lawsuits affecting the property; other persons or entities who claim an interest in the property; and facts, circumstances or events on or about the property

---

[1] We dismissed an earlier appeal for lack of a final order because the McClures' cross-claim against the Gladdens was specifically reserved and not disposed of. *See Trustees of the Pruitt Family Trust v. Gladden*, 2014 Ark. App. 88 (*Gladden I*).

which, if known to a potential buyer, could adversely affect in a material manner the value or desirability of the property. The Disclosure Statement also states:

> SELLER FURTHER CERTIFIES THAT THE INFORMATION HEREIN IS TRUE AND CORRECT TO THE BEST OF SELLER'S KNOWLEDGE AS OF THE ABOVE DATE. SELLER FURTHER AGREES TO NOTIFY IN WRITING BUYERS, LESSEES, TENANTS AND LISTING FIRM OF ANY CHANGES IN THIS DISCLOSURE THAT MAY BECOME KNOWN TO SELLER AFTER THE DATE SIGNED BY SELLER.

On or about April 15, 2010, the Gladdens' attorney, Terry Diggs, received a letter from the Pruitts' attorney, which questioned the Gladdens' actions in having the road vacated and threatened litigation. The heart of the dispute was that the Gladdens were claiming all of the vacated road, instead of simply one-half. The letter proposed that the road remain closed with each party receiving one-half of the vacated road.

On May 10, 2010, the county judge sent a letter to Diggs indicating that he was, pursuant to Ark. R. Civ. P. 60(a), rescinding his previous order that vacated the road due to "numerous complaints from subdivision residents about being denied use of the boat ramp." According to the judge's letter, the bill of assurances for the subdivision provides that "[a]ll owners of lots shall have the use at any time of the boat ramp located within the Subdivision."

On July 23, 2010, the Gladdens and the McClures entered into a real–estate contract in which the McClures would purchase the Gladdens' property, contingent upon a portion of Kyler Road being closed. The McClures' purchase of the property closed on August 20, 2010.

The county judge sent another letter to Diggs on August 9, 2010, stating that he had decided to allow his original order closing the road to stand. The judge noted that the bill

of assurances contained no reference to a boat ramp, and that the ramp is not referenced on the subdivision plat. He also noted that the "soon to be new property owners" will allow subdivision residents some use of the boat ramp, subject to some unspecified restrictions.

On September 28, 2010, the trust filed a complaint for declaratory judgment seeking to set aside the county court's order vacating Kyler Road against the Gladdens, the McClures, and the county judge. After describing the proceedings in the county court, the trust alleged that it owned property abutting the roadway but did not have an opportunity to be heard in the matter. The trust claimed that the petition did not follow the statutory-notice provisions governing the closure of county roads or streets; thus, the trust claimed that the county court lacked jurisdiction to vacate the street.

The trust requested a declaratory-judgment finding that the county judge lacked jurisdiction to hear the petition and that the order vacating the street was void ab initio. The trust also asked the court to find that the Gladdens and the McClures had no rights in the vacated street property and to order the removal of a gate and a fence blocking the roadway.

The Gladdens answered, and the McClures filed an answer and a cross-claim against the Gladdens. The McClures sought reformation of their deed from the Gladdens, alleging that it provided an erroneous legal description of the property. Alternatively, if the order vacating the street was set aside, the McClures sought to have their purchase rescinded.

The county judge filed a motion to dismiss, alleging that the trust had failed to state a claim against him. The circuit court denied the motion to dismiss but ordered the trust to amend the style of the caption to name "Garland County" as the party.

4

The Gladdens subsequently filed a motion to dismiss or, in the alternative, motion for summary judgment. They alleged that the circuit court lacked subject-matter jurisdiction over the trust's complaint because the trust did not timely appeal the county court's order and that the complaint was an improper collateral attack of the county court's valid judgment. The county judge moved to adopt the Gladdens' motion. The circuit court dismissed the Gladdens, the McClures, Garland County, and the county judge on both alternative bases, i.e., that the trust did not timely appeal and that its complaint was an improper collateral attack on the county judge's order. The trust timely appealed.

We dismissed the trust's attempted appeal. *Gladden I*, *supra*. We specifically noted that the McClures' cross-claim against the Gladdens remained undisposed of. Our opinion also included a footnote suggesting a consultation of Ark. R. Civ. P. 4(f) and *Myers v. Bogner*, 2011 Ark. App. 98, 380 S.W.3d 529, before entry of a final order.

On remand from *Gladden I*, the McClures filed a motion for summary judgment on their cross-claim against the Gladdens, based on the Gladdens' Seller Property Disclosure Statement not mentioning the Pruitts' letter threatening litigation over the closure of part of Kyler Road and their assertion that they would not have purchased the property if the Pruitts' letter had been disclosed. Kim McClure testified to these facts in her affidavit. McClure also itemized certain out-of-pocket expenses for which they sought reimbursement, including closing costs, improvements to the property, potential lost income in the form of the difference between the mortgage payment and rental income, and attorney's fees.

The Gladdens responded to the McClures' motion, arguing that they had learned of the Pruitts' letter threatening litigation from their attorney approximately April 21, 2010, and that around the beginning of May, the letter was disclosed to their realtor, Shelly McDonald. The Gladdens also asserted that, while the McClures may not have been specifically aware of the Pruitts' dispute with the Gladdens, the McClures were aware of the general dispute over the closure of the road. In their supporting brief, the Gladdens argued that there were questions of material fact as to whether the McClures justifiably relied on the disclosure statement because Kim McClure's deposition testimony showed that the McClures were aware of the dispute over the closure of the road and that Kim McClure had met with the county judge to discuss the closure. Finally, the Gladdens argued that, if the court granted rescission, the McClures must account for rents and profits while the property was in their possession.

Following a hearing, the circuit court entered its order granting the McClures' motion for summary judgment on September 2, 2014. The court found that the Gladdens did not disclose the Pruitts' April 15, 2010 letter threatening litigation and that the McClures had no knowledge of the dispute between the Pruitts and the Gladdens until after they had purchased the property. The court found that the McClures had met their burden of establishing the elements of fraud, that the Gladdens had breached the contract with the McClures, and that the McClures were entitled to a rescission of that contract. The court further found that the Gladdens had failed to meet proof with proof and that no material issues of fact remained. The court concluded that the McClures' cause of action sounded primarily in contract, not in tort, based on the Gladdens' breach of that contract by not

disclosing the Pruitts' letter threatening litigation. The court awarded the McClures judgment against the Gladdens for the purchase price in the amount of $282,000, with the McClures to satisfy all outstanding mortgages and liens. The court awarded other consequential damages consisting of the McClures' closing costs, their improvements to the property, and the loss of the difference between rental income of the property and the mortgage payment of approximately $45,000.

On September 9, 2014, the circuit court entered an order that set aside its order of February 23, 2013, that dismissed the trust's complaint for declaratory judgment for lack of subject–matter jurisdiction. The September 9, 2014 order reinstated the trust's cause of action. The court set aside as void ab initio and a nullity the county judge's February 23, 2010 order vacating the street; the county judge's letter attempting to rescind that order; and the county judge's August 9, 2010 letter purporting to reinstate the rescinded order. The court noted that there was a common basis for the court's order granting summary judgment to the McClures and its present order because the Gladdens failed to disclose the trust's April 15, 2010 letter to the Gladdens' attorney objecting to the closure of Kyler Road for lack of notice and the fact that the trust was not to receive part of the vacated road.

The Gladdens obtained new counsel and filed motions for new trial or to set aside the summary judgment. They asserted that the McClures failed to provide any evidence as to the materiality of the statement and failed to show reasonable reliance and that the court granted a remedy that the McClures did not seek. The Gladdens further argued that the Pruitts had already been dismissed from the action prior to the McClures seeking rescission. They further argued that the court erred by granting rescission in the absence of evidence

establishing fraud by clear and convincing evidence. The Gladdens also filed a motion

seeking to set aside the court's order voiding the county judge's order closing the road. The

motion asserted that the order violated their due-process rights because it was entered

without notice to the Gladdens. After a hearing, the circuit court denied the Gladdens'

motions.

The McClures filed a motion seeking attorney's fees and costs. The Gladdens

responded to the motion, asserting that the McClures' cause of action sounded primarily in

tort and that attorney's fees were not recoverable under Ark. Code Ann. § 16-22-308. The

court awarded the McClures $13,741.63 in attorney's fees after a title company had paid

$10,000 toward the McClures' attorney's fees. The court also awarded $165.22 in costs, and

$650 for the cost of a mediator. This appeal followed.

II. *Arguments on Appeal*

A. Summary Judgment

The Gladdens first argue that the circuit court erred in granting summary judgment

to the McClures because issues of fact existed, the McClures did not establish a fraudulent

misrepresentation, and they did not establish entitlement to rescission.

The circuit court granted rescission of the contract based on its finding that the

Gladdens breached the contract when they failed to disclose the Pruitts' April 15, 2010

letter. The Gladdens argue that the McClures cannot prove the reliance element because

the same real-estate agent represented both parties and that Kim McClure met with the

county judge to discuss the closure of Kyler Road prior to the execution of the contract.

We are not persuaded that there is an issue of material fact to preclude summary judgment.

The Gladdens' argument concerning Kim McClure's knowledge about the county judge's closure of the road conflates two related but distinct issues—the Gladdens' failure to disclose the Pruitts' letter and the process by which the county judge closed Kyler Road. The McClures filed the cross-claim against the Gladdens because of the Gladdens' failure to disclose the letter, not because the road was or was not closed.

The Gladdens' reliance on Kim McClure's deposition testimony is misplaced because it is clear that McClure's testimony relates to the county judge's closure of the road and his possible rescission of that order and to the fact that there were two bills of assurance purporting to apply to the subdivision. This is borne out by McClure's testimony that they had no knowledge of possible problems with the Pruitts until the day of closing. The Gladdens offer nothing to rebut this assertion.

The only proof the Gladdens submitted concerning the McClures' knowledge of the Pruitts' letter was Allen Gladden's affidavit stating that "around the beginning of May, I disclosed to my realtor, Shelly McDonald, that my attorney had received a letter from the [Pruitts'] attorney questioning our actions in vacating the road in dispute and the threatened litigation." He does not mention the fact that the realtor was representing both parties. Moreover, at the hearing on the motion for summary judgment, the Gladdens' attorney admitted that the McClures did not know of the Pruitts' letter because it had not been disclosed. The Gladdens did not argue that the agent's knowledge of the Pruitts' letter should be imputed to the McClures until their posttrial motion to set aside the summary judgment. That failure leaves the facts contained in Kim McClure's affidavit as uncontroverted and to be accepted as true and entitles the McClures to summary judgment because there is no

9

justiciable issue on the facts. *Ashley v. Eisele*, 247 Ark. 281, 445 S.W.2d 76 (1969); *Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000).

## B. The McClures' Damages

Next, the Gladdens take issue with the circuit court's award of other consequential damages, such as improvements to the property, arguing that there was no hearing on damages and that the court just accepted the figures set forth in Kim McClure's affidavit. However, it was the Gladdens' burden to meet proof with proof to establish the existence of a genuine issue of material fact for trial. They did not do so. Allen Gladden's affidavit in response to the motion for summary judgment does not mention the issue of damages. Instead, they argued that they could not respond to the motion. If the nature of the McClures' "improvements" was unknown to the Gladdens, they could have requested a continuance of the hearing on the motion for summary judgment in order to conduct discovery into the nature and extent of those improvements. Ark. R. Civ. P. 56(f). Again, they did not do so. Had the Gladdens filed such an affidavit, "the trial court might well have postponed a decision on summary judgment." *Crawford v. Lee Cnty. Sch. Dist.*, 64 Ark. App. 90, 95, 983 S.W.2d 141, 144 (1998).

In connection with this point, the Gladdens also argue that the amount of the judgment should have been reduced by the amount of the rental value because the McClures had been in possession of the property throughout the litigation. However, in its oral ruling granting summary judgment to the McClures, the court found that a credit was given for the rental income the McClures had received. This credit was also reflected in the court's

order as the difference between the monthly mortgage payment and the rental income. Further, the Gladdens did not argue this point until the hearing on their posttrial motions, which was too late. *See, e.g.*, *Switzer v. Shelter Mut. Ins. Co.*, 362 Ark. 419, 208 S.W.3d 792 (2005); *Tate-Smith v. Cupples*, 355 Ark. 230, 134 S.W.3d 535 (2003); *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002).

### C. Attorney's Fees and Costs

For their next point, the Gladdens challenge the circuit court's award of attorney's fees and costs to the McClures. They argue that the McClures' cross-claim sounded in tort and, therefore, attorney's fees are not available under Arkansas Code Annotated section 16–22–308. Whether an award of attorney's fees is appropriate under section 16–22–308 depends on whether the case is one primarily based on breach of contract. *Jiles v. Union Planters Bank*, 90 Ark. App. 245, 247, 205 S.W.3d 187, 189 (2005).

The Gladdens' argument is premised on the circuit court's finding that the McClures had met their burden of establishing the elements of fraud. The fact that the court determined that the Gladdens made fraudulent misrepresentations in their Seller Disclosure Statement does not turn the McClures' cause of action into one for fraud where the court otherwise analyzed that cause of action as one for breach of contract. Here, the McClures' cross-claim asserted two causes of action that unquestionably sounded in contract— reformation of their deed to include part of the area of the road closed by order of the county judge and, in the alternative, if the county judge's order were set aside, rescission,

11

based on the Gladdens' failure to disclose the Pruitts' letter threatening litigation.[2] The circuit court plainly found that the parties had entered into a real estate contract, that the Gladdens had breached that contract by not updating their Seller Disclosure Statement with information concerning the Pruitts' letter threatening litigation, and that the contract should be rescinded because of that breach. The damages awarded were based in contract—return of the McClures' purchase price and other consequential damages incurred. No compensatory or punitive damages typically associated with tort claims were awarded. The circuit court used equity to put the parties back where they were prior to the execution of the contract, rather than money damages to compensate for any tort liability. Because the Gladdens do not challenge the reasonableness of the fees awarded, or the fact that a prevailing party may be awarded fees, and the circuit court properly considered the appropriate factors, we cannot say that the court abused its discretion in its award of attorney's fees.

## D. Relief to the Pruitts

Finally, the Gladdens contend that the circuit court erred in setting aside the county judge's order vacating Kyler Road at the hearing on the motion for summary judgment. In fact, the circuit court set aside the entire process that took place before the county judge,

---

[2] We are, of course, aware that rescission may be used in either contract cases or tort cases. *Beck v. Inter City Transp., Inc.*, 2012 Ark. App. 370, 417 S.W.3d 740. Equitable rescission is distinct from rescission at law in that equitable rescission requires the affirmative powers of an equity court to rescind or undo the contract, whereas in rescission at law, the court merely grants restitution after the party seeking it has achieved rescission by his own acts. *Phelps v. U.S. Life Credit Life Ins. Co.*, 336 Ark. 257, 984 S.W.2d 425 (1999). In this case, the McClures are seeking to cancel an instrument not through their own acts but rather through the affirmative powers of a court, which would constitute equitable rescission. This is just another confirmation that the claim sounds in contract, not in tort.

declaring all the findings by the county judge to be void ab initio due to improper notice. They argue that their due-process rights were violated when the court considered the issue without prior notice. We hold that the Gladdens did not preserve the issue for our review because they failed to make a sufficient contemporaneous objection to the circuit court's action.

The Pruitts' attorney was present at the hearing on the McClures' motion for summary judgment, and a discussion ensued between the court and counsel for the Pruitts over our opinion in *Gladden I* and what was necessary for entry of a final order so the Pruitts could appeal. In response to a question from the court, the McClures' attorney said "We did not know we were going to go down this line of questioning. We are not here for any of those arguments about modification and judgment. If [the Pruitts' attorney] wants to present a motion and let everyone brief arguments on what he thinks the Court of Appeals interpretation is, we will be glad to do it." The Gladdens' attorney said that he agreed with the McClures' attorney that they were there for the motion for summary judgment. The Pruitts' attorney then argued that the footnote in *Gladden I* invited the circuit court to revisit the issue sua sponte. After some further discussion, the court then said, "[w]e need to err on the side of caution." The court then proceeded to hear the arguments on the McClures' motion for summary judgment.

After orally granting the motion for summary judgment, the court returned to the issue of the meaning of our opinion in *Gladden I* and how to best handle the issue on remand. The court then asked the Pruitts' attorney if he wanted some language in the order granting the motion for summary judgment voiding the county court's order closing the

road. Counsel for the McClures said that it should be "[t]he cleanest way for us to resolve this issue, and if they want to do something to supplement, you all can do that." The Gladdens' attorney said, "I would agree with that." The court then asked the Pruitts' attorney if he wanted to submit an order voiding the county judge's order closing the road. The following colloquy then occurred:

| | |
|---|---|
| ATTORNEY FOR THE PRUITTS: | If it is not with any objection. |
| ATTORNEY FOR THE GLADDENS: | We are voiding which order? |
| THE COURT: | The county judge's vacation of the road. I do not think proper service was given. If we didn't follow Rule 4(f), and if we didn't follow the county rules concerning vacating a road, it is going to be voided by the Court of Appeals. |
| ATTORNEY FOR THE GLADDENS: | Mr. Clay is still part of this as well, he is out of town. We would like the opportunity to confer and be able to discuss this issue. I would object on that basis that I would like an opportunity to confer with Mr. Clay on that issue. |

Here, the Gladdens initially made an objection that the circuit court should not entertain the issue because that was not the issue that had been noticed for the hearing. The circuit court appeared to have acquiesced when it indicated that caution was needed and proceeded to hear the motion for summary judgment. However, after an oral ruling on the motion, the court returned to the issue. The Gladdens offered no further objection, other than that their lead counsel was out of town. Moreover, they agreed that the voiding of the county judge's order should be done in the cleanest way possible. Unless a party has no opportunity to object to a ruling of the circuit court, an objection must be made at the time

of the ruling, and the objecting party must make known to the court the action desired and the grounds of the objection. *Olson v. Olson*, 2014 Ark. 537, at 7, 453 S.W.3d 128, 133. Here, the Gladdens had the opportunity to object on the basis they now argue, but failed to do so.

It was not until their posttrial motion seeking to have the circuit court set aside its order that the Gladdens raised the due-process argument they now make. As we explained earlier, an objection first made in a posttrial motion is not timely. *Switzer, supra.* Any error argued on appeal must have first been directed to the circuit court's attention in some appropriate manner, so that the court has an opportunity to address the issue. *Switzer, supra*; *Stacks v. Jones*, 323 Ark. 643, 916 S.W.2d 120 (1996). A party cannot wait until the outcome of a case to bring an error to the circuit court's attention. *Switzer, supra.*

Affirmed.

HARRISON and WHITEAKER, JJ., agree.

*Legacy Law Group*, by: *Philip B. Montgomery*, for appellants.

*Satterfield Law Firm*, by: *Guy "Randy" Satterfield*, for appellees.